# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-1501

WILLIAM H. WANLESS, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    September 18, 2009 )

*Robert K. Kry*, of Washington, D.C., was on the brief for the appellant.

*Paul J. Hutter*, General Counsel; *R. Randall Campbell,* Assistant General Counsel; *Edward V. Cassidy, Jr.,* Deputy Assistant General Counsel; and *Yvette R. White*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and MOORMAN and DAVIS, *Judges*.

DAVIS, *Judge*: U.S. Army veteran William H. Wanless appeals a December 8, 2006, Board of Veterans' Appeals (Board) decision that denied him payment of full disability compensation during his period of incarceration in a private prison under State contract. Mr. Wanless argues that because he was incarcerated in a private prison under State contract, the Board erred in reducing his benefits under 38 U.S.C. § 5313. For the reasons stated below, we affirm the Board's December 2006 decision.

## I. BACKGROUND

Mr. Wanless served on active duty in the U.S. Army from September 1979 to November 1981. Subsequently, VA granted him service-connection compensation for enucleation of the right eye, chronic lumbar strain with degenerative disc disease, tinnitus, high-frequency hearing loss, and residuals of a cervical strain.

In late January 1993, VA received a copy of a January 15, 1993, "Judgment and Sentence" rendered by the Payne County, Oklahoma, District Court, which found Mr. Wanless guilty of a felony and sentenced him to incarceration in a penitentiary for life without parole. In February 1993, VA informed Mr. Wanless that because of his felony conviction and subsequent incarceration, section 5313 of title 38, U.S. Code, required that his monthly disability compensation be reduced from $808 to $85 per month. Record (R.) at 77; *see* 38 U.S.C. § 5313(a)(1) (1993) (reducing the benefits of veterans who are convicted of a felony and incarcerated in a "Federal, State, or local penal institution" to a 10% disability rating).[1] In June 1993, VA informed Mr. Wanless that it had reduced his monthly disability compensation to $85. Mr. Wanless appealed that reduction to the Board and, in a May 1997 decision, the Board determined that VA had properly reduced his disability compensation based on his incarceration for a felony conviction.

In March 1999, Mr. Wanless requested from VA his full VA disability compensation. He advised that he had been transferred from a State-operated prison to a privately operated prison run by a for-profit company, Corrections Corporation of America (CCA).[2] Mr. Wanless contended that because his incarceration was not at a State-run prison as defined by 38 U.S.C. § 5313, he was entitled to the reinstatement of his full compensation. A VA regional office (RO) denied the request on the basis that Mr. Wanless remained imprisoned following his felony conviction and it was irrelevant whether the place of incarceration was privately run or State run. Mr. Wanless appealed to the Board, which also concluded that Mr. Wanless's imprisonment in the CCA facility qualified as imprisonment in a State prison under section 5313. Mr. Wanless appealed that decision to the Court. On September 13, 2004, the Court held that the Board had failed to make a factual finding as to whether the appellant's incarceration at the private facility amounted to incarceration in a "State penal institution" pursuant to section 5313, and thus remanded the matter for the Board to make this determination in the first instance. *Wanless v. Principi*, 18 Vet.App. 337 (2004).

---

[1] Effective December 22, 2006, Congress amended section 5313 to explicitly include the category of "other penal institution or correctional facility" in the list of prison facilities. *See* Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, § 1002(f), 120 Stat. 3403, 3464-64.

[2] Under Oklahoma statute, the Oklahoma Department of Corrections is authorized to contract with private prison contractors for the operation of a prison. Such a contractor must demonstrate "the ability to comply with the standards of the American Correctional Association and with specific court orders." OKLA. STAT. tit. 57, § 561.1(C)(2).

In response to the Court remand, in June 2005 the Board sought a VA General Counsel opinion on whether a privately owned and operated correctional facility, under a contract with a State to provide correctional facilities including the physical custody and daily operational control of inmates, constitutes a Federal, State, or local penal institution under section 5313. In August 2006, the VA General Counsel issued an opinion titled "Incarceration in a Privately Owned and Operated Correctional Facility–38 U.S.C. § 5313." The General Counsel opinion stated:

> Because a private corporation's authority to confine prisoners under a contract with a State agency derives completely from the State's inherent authority to incarcerate persons through its operation of a criminal justice system, incarceration in a facility owned and operated by a corporation, pursuant to a contract between the corporation and the State department of corrections, is tantamount to incarceration in a State penal institution within the meaning of section 5313(a)(1).

VA Gen. Coun. Prec. 5-2006 (Aug. 11, 2006) [hereinafter G.C. Prec. 5-2006]. The opinion thus concluded that the reduction of benefits provision of section 5313 applies to those incarcerated for a felony conviction in a privately operated facility contracted by the State. *Id.* On December 8, 2006, the Board, relying on that General Counsel opinion, found that Mr. Wanless was "shown to be presently incarcerated in a State penal institution for VA purposes under the felony conviction sentence imposed in January 1993." R. at 8. The Board thus concluded that, under section 5313, Mr. Wanless was not entitled to payment of full disability compensation. This appeal followed.

## II. LAW AND ANALYSIS

Until it was amended effective December 22, 2006, section 5313 stated:

> (a)(1) To the extent provided in subsection (d) of this section, any person who is entitled to compensation or to dependency and indemnity compensation [(DIC)] and who is incarcerated in a *Federal, State, or local penal institution* for a period in excess of sixty days for conviction of a felony shall not be paid such compensation or [DIC], for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends, in an amount that exceeds–
>
>> (A) in the case of a veteran with a service-connected disability rated at 20 percent or more, the rate of compensation payable under section 1114(a) of this title; . . .
>
> . . . .

3

(d) The provisions of subsection (a) of this section shall apply (1) with respect to any period of incarceration of a person for conviction of a felony committed after October 7, 1980, and (2) with respect to any period of incarceration on or after October 1, 1980, for conviction of a felony of a person who on October 1, 1980, is incarcerated for conviction of such felony and with respect to whom the action granting an award of compensation or [DIC] is taken on or after such date.

38 U.S.C. § 5313 (emphasis added); *see also* 38 C.F.R. § 3.665 (1999) (implementing regulation).[3]

Mr. Wanless argues that his benefits should not be reduced for the period he was held in a prison operated by a private company under contract with the State of Oklahoma because a privately operated prison cannot be considered a "Federal, State, or local" institution as required under section 5313. He contends that his benefits should thus be restored for the period he was imprisoned in the private CCA facility. The Secretary maintains that, based on the August 2006 VA General Counsel opinion and congressional intent, section 5313 should be interpreted to mean that incarceration in a state-contracted, privately operated prison facility resulting from a felony conviction makes a veteran ineligible to receive full disability compensation.

The question before the Court is whether the Board was correct in concluding that Mr. Wanless's benefits were subject to reduction under section 5313 because of his felony conviction and subsequent incarceration in the State-contracted prison. The Court's inquiry into the proper interpretation of section 5313 is a question of law, and the Court reviews the Board's interpretation of the law de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc); *see also Hensley v. West*, 212 F.3d 1255, 1262-64 (Fed. Cir. 2000) (discussing proper application of de novo review).

A. Statutory Interpretation

*1. Plain Language*

"'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. MSPB*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself." *Sursely v. Peake*, 22 Vet.App. 21, 24 (2007); *see also Good*

---

[3] The Court notes that although the statute has been changed to explicitly incorporate "other penal institution or correctional facility" in the list of affected prison facilities, the regulation does not include this change. *See* 38 C.F.R. § 3.665 (2009).

*Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993). "'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)); *see Sweitzer v. Brown*, 5 Vet.App. 503, 505 (1993); *see also Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd* 513 U.S. 115 (1994); *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) (When "'the plain meaning of a statute is discernible, that plain meaning must be given effect.'" (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995))); *Smith v. Derwinski*, 2 Vet.App. 429, 431 (1992) (If "a reviewing court 'find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" (quoting *Demarest v. Manspeaker*, 498 U.S. 184 (1991))).

The plain language of section 5313 does not explicitly include or exclude private prisons under State contract from the list of incarceration facilities. 38 U.S.C. § 5313. As such, the Court must review the structure and legislative history of the statute to determine whether VA's interpretation of this statute as including certain private prisons contracted by the State through the Board's ruling is a permissible construction of section 5313. *See Chevron v. Natural Resources Def. Council*, 467 U.S. 837, 842-43 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

### 2. *Statutory Content*

In reviewing the Board's interpretation of section 5313, we must consider the standard meaning of words. "Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or–more importantly–veteran can rely on a statute or regulation to mean what it appears to say." *Tropf v. Nicholson*, 20 Vet.App. 317, 321-22 n.1 (2006). The title of the statute specifically limits compensation provided "to persons *incarcerated* for conviction of a felony." 38 U.S.C. § 5313 (emphasis added). Indeed, throughout the statute, the emphasis is on a veteran's "incarceration." "Incarceration" is defined as "[t]he act or process of confining someone; IMPRISONMENT."

BLACK'S LAW DICTIONARY 764 (7th ed. 1999) [hereinafter BLACK'S]; *see* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 586 (10th ed. 1998) [hereinafter MERRIAM-WEBSTER'S] (defining "incarcerate" as "to put in prison"). The statute also excludes reductions of compensation where there is confinement in halfway houses or participation in a work-release program, as these forms of placement do not fall within a strict definition of the term "incarceration." 38 U.S.C. § 5313(a)(2). For example, a halfway house is not strictly a prison, but is "a residence for formerly institutionalized individuals (as mental patients, drug addicts, or convicts) that is designed to facilitate their readjustment to private life." MERRIAM-WEBSTER'S AT 524. In contrast, the rules and limitations of "incarceration" in a private prison under State contract do not differ from "incarceration" in a State facility.

Additionally, the Court of Civil Appeals of Oklahoma has previously concluded that although a person who had been sentenced to a term of confinement under the custody of the Department of Corrections was confined at a privately owned facility, his status as a prisoner was not altered. *Washington v. Cornell Corr. Inc.*, 30 P.3d 1162, 1164 (Okla. Civ. App. 2001). Furthermore, there remains no dispute that privately managed prisons have been and currently are operated under contract for the State of Oklahoma or that the State of Oklahoma is expending funds to incarcerate these prisoners. *See generally* http://www.doc.state.ok.us/newsroom/annuals/2008/08ANNUAL.pdf (visited Aug. 6, 2009) ("The State of Corrections in Oklahoma Fiscal Year 2008"; listing per diem expense to State per inmate). As such, "the reasons for not helping a prisoner at a privately run institution maintain a standard of living are identical to the reasons for not doing so for a prisoner at a publicly run institution." *See Wanless,* 18 Vet.App. at 357. Thus, a review of the statutory structure and content supports the conclusion that Congress intended the compensation reduction provision to apply to all veterans who are subject to incarceration for longer than 60 days for a felony, regardless of whether the facility in which they were incarcerated was publicly or privately operated.

### 3. Legislative History

The legislative history of section 5313 provides significant insight into the congressional intent underlying the section 5313 provision regarding benefits reduction for veterans incarcerated for a felony. That provision was originally promulgated in 1980, *see* Pub. L. No. 96-385, Stat. 1528,

6

tit. V, §504(a) (Oct. 7, 1980) (originally under 38 U.S.C. § 3113), and the legislative report accompanying the original version of the bill stated the statute's purpose:

> We have read in the newspapers where we have some individuals who are serving sentences for murder and other major criminal offenses who are drawing Federal benefits. In some cases, these individuals are drawing veterans benefits. This change in current law would restrict these benefits to these individuals. This provision would provide for a saving of $3 million during the next fiscal year.

126 CONG. REC. 18,791 (1980) (statement of Rep. Montgomery). After the introduction of the final bill, Representative Montgomery, the bill's principal sponsor, explained:

> I do not see the wisdom of providing hundreds and thousands of tax free benefits to such individuals [referring to individuals serving long sentences for the commission of felonies] when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same individuals in penal institutions.

126 Cong. Rec. 26,118 (1980). Representative Montgomery noted that servicemen who are dishonorably discharged because of the in-service commission of a felony are barred from receiving VA benefits and that "an economic effect caused by [a service-connected] disability is not felt" by incarcerated veterans. *Id.*; *see also* 38 U.S.C. § 101(2) (requiring that a veteran's discharge must be under conditions other than dishonorable in order to receive VA benefits). Congressman Chalmers Wylie likewise remarked: "In the case of imprisonment, when a prisoner is being fully supported by tax dollars that fund the penal institution, it becomes ludicrous to continue payment of benefits designed to help him maintain a standard of living." 126 Cong. Rec. 26,122 (1980) (emphasis omitted). These remarks demonstrate that Congress intended to avoid wasteful expenditures of Government resources. Congress has explicitly concluded that if the taxpayers are financing a veteran's incarceration, it is contrary to the public good to also pay him full VA disability benefits. The Congressmen's concerns reveal a strong sense of responsibility to the public fisc. Nothing in the legislative history suggests that Congress was concerned about limiting section 5313 so as to not affect veterans who are incarcerated in privately run, State-contracted penal institutions. The statute's emphasis is thus not on the place of incarceration, but on the source of the monies used to maintain that incarceration. Congress's main stated objective is the avoidance of duplicative Government expenditures that would result in a windfall for those convicted of felonies.

7

Consequently, Congress never intended to make a distinction between public prisons and private prisons paid for by public funds.

Mr. Wanless provides no support in the legislative history of section 5313 in arguing that Congress could have intended to exclude State-contracted private prisons from section 5313 and that there are legitimate reasons for the legislature to distinguish between public and private State-contracted prisons. Indeed, such contentions disregard the legislative history of the statute. Mr. Wanless argues that because the Social Security Act precludes payment to anyone confined in a "jail, prison, or other penal institution or correctional facility," without referencing jurisdictions as section 5313 does, one should presume that Congress was making a purposeful distinction in the two statutes. *See* Appellant's Brief (Br.) at 11; *see also* Pub. L. No. 96-473, 94 Stat. 2263, 2265, § 5(c) (Oct. 19, 1980) (current version at 42 U.S.C. § 402(x)(1)(A)(I)). That position is unpersuasive. As stated above, there is simply no indication in the legislative history of section 5313 that Congress, based on a desire to exempt veterans housed in private, State-contracted prisons, purposefully employed different language in section 5313 than that found in the Social Security Act.

Mr. Wanless's argument that the December 2006 amendment to section 5313 reveals that the prior version of the statute should be interpreted as he suggests also must fail. *See* Appellant's Br. at 12. The amendment was published as a "*Clarification* of Correctional Facilities Covered by Certain Provisions of Law." *See* Pub. L. No. 109-461 (2006) (emphasis added). The statutory language now states that VA benefits will be reduced for claimants convicted of a felony and incarcerated in a "Federal, State, local, or other penal institution or correctional facility." 38 U.S.C. § 5313. Indeed, the legislative history of the bill states that it was promulgated as part of "technical and clarifying amendments to title 38." 152 Cong. Rec. H 9015 (statement of Rep. Steve Buyer). This clarifying amendment further demonstrates to the Court that the prior version of the statute adequately expressed the congressional intent to provide for a reduction of benefits to veterans incarcerated for commission of a felony, regardless of whether the institution in which a veteran is confined is a State institution or a State-contracted institution. *See Comm'r v. Estate of Holmes*, 326 U.S. 480 (1946) (distinguishing between substantive and clarifying amendments); *see also Aectra Ref. & Mktg. v. United States*, 565 F.3d 1364, 1370 (Fed. Cir. 2009) (discussing a clarifying amendment and stating: "Given that Congress is presumed to enact legislation with knowledge of the law and a newly-

enacted statute is presumed to be harmonious with existing law and judicial concepts, the absence of any statement that the statute was designed to *modify* the limitations period for drawback claims is telling" (citations omitted) (emphasis added)). As such, contrary to Mr. Wanless's contention, Congress, by its own explanation, amended the plain language of the statute to explicitly reflect its original intent and not to change the meaning, purpose, or effect of section 5313.

*4. August 2006 VA General Counsel Opinion*

The Court reviews VA's statutory interpretation de novo. *DeBeaord v. Principi*, 18 Vet.App. 357, 363 (2004). However, we recognize that opinions of the General Counsel "constitute a body of experience and informed judgment." *Osman v. Peake*, 22 Vet.App. 252, 256 (2008). VA's interpretation of the statute is entitled to respect to the extent that it has "the power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Gonzales v. Or.*, 546 U.S. 243, 257-58 (2006) (concluding that regulation "does little more than restate the terms of the statute itself" and discussing whether agency interpretation was a "permissible interpretation" of the statute). Here, in August 2006, the Secretary published G.C. Prec. 5-2006, which provides his interpretation, with supporting rationale, of section 5313. That August 2006 opinion concluded that a veteran's incarceration in a privately owned and operated correctional facility under State contract constituted incarceration as contemplated under section 5313. *See* G.C. Prec. 5-2006 ("Incarceration in a privately Owned and Operated Correctional Facility–38 U.S.C. § 5313"). The General Counsel opinion provides the following reasoning for its conclusion: (1) A private prison's authority to confine a veteran derives from his State felony conviction and the authority to imprison citizens ultimately rests with the government only; (2) interpreting section 5313 to apply to private prisons under State contract would promote the statute's stated legislative purpose of avoiding the duplication of governmental expenditures for veterans who are already supported by the government and suffer no lost earnings as a result of their disability; and (3) creating a distinction between veterans in State-operated and State-contracted privately operated prisons would create an unreasonable or irrational result because it would both thwart the intentions of Congress and allow "felons who chance to be incarcerated in private facilities at government expense [to] continue to be entitled to the full amount of their VA benefits while felons incarcerated in State-owned-and-operated facilities would not." *Id.* at ¶ 4-6.

9

Mr. Wanless's argument that G.C. Prec. 5-2006 conflicts with a previous General Counsel Precedent opinion, G.C. Prec. 10-2001 (May 24, 2001), which concluded that, in some cases, VA benefits would not be reduced under section 5313 while veterans were incarcerated in foreign prisons, is misplaced. *See* VA Gen. Coun. Prec. 10-2001 (May 24, 2001) [hereinafter G.C. Prec. 10-2001]. Mr. Wanless fails to adequately explain how his felony conviction in a State court and subsequent imprisonment in a State-contracted, privately owned prison, located in the United States, could be a considered a "foreign prison"[4] for VA benefits purposes. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (appellant bears burden of demonstrating error on appeal); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (same). Further, G.C. Prec. 10-2001 made clear veterans convicted of felonies in foreign countries and imprisoned in foreign prisons are exempt from section 5313 because their incarcerations are not funded by U.S. tax dollars. G.C. Prec. 10-2001. That reasoning is consistent with the August 2006 General Counsel opinion and expressed congressional intent underlying section 5313 that, to preserve taxpayer resources, veterans who are convicted of a felony in the United States and housed in a prison funded by U.S. citizens' tax dollars are subject to a benefit reduction under section 5313. Thus, contrary to Mr. Wanless's contention, the two opinions do not conflict. The Secretary's interpretation of section 5313 found in the VA General Counsel opinion is very persuasive. *See Skidmore, supra; Osman*, 22 Vet.App. at 256 (weight given to VA General Counsel Opinions "depends heavily upon their thoroughness, reasoning, and consistency with earlier and later pronouncements on the specific issue"). As stated above, the legislative history wholly supports the Secretary's views as well. As such, we hold that the Secretary's interpretation is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See DeBeaord*, *supra*; *see also Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (reiterating that the "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' standard of review . . . contemplates de novo review of questions of law").

B. Board's Statement of Reasons or Bases

The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that

---

[4] "Foreign" is defined as "[o]f or relating to another country." BLACK'S at 658.

statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). Mr. Wanless argues that the Board failed to fulfill the terms of the Court's 2004 remand order by failing to address the terms of the contract between CCA and the State of Oklahoma. *See Wanless*, 18 Vet.App. at 337. It is well established that "a remand by this Court . . . confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders." *Stegall v. West*, 11 Vet.App. 268, 271 (1998). Furthermore, "a remand by this Court . . . imposes upon the Secretary . . . a concomitant duty to ensure compliance with the terms of the remand," and that where "the remand orders of the Board . . . are not complied with, the Board itself errs in failing to insure compliance." *Id*. However, it is *substantial* compliance, not absolute compliance, that is required. *See Dyment v. West*, 13 Vet.App. 141, 146-47 (1999). The Court's 2004 order stated: "Given that the resolution of these issues *may* involve very specific factual determinations and other documents that are best for the Board to make in the first instance, the Court concludes that it is premature for the Court to address this matter." *Id*. (emphasis added).

Contrary to Mr. Wanless's argument, this does not constitute a binding instruction on remand for the Board to review certain documents. It is clear from the record that the Board substantially complied with this Court's remand order. *See Dyment*, *supra*. After this Court's September 2004 remand, the Board requested a VA General Counsel opinion on the matter. As discussed above, that opinion provided sufficient analysis and explanation for the Secretary's interpretation that section 5313 required the reduction of benefits to veterans convicted of a felony and imprisoned in a State-contracted, privately owned prison.[5] Based on the VA General Counsel's opinion and supporting analysis, the Board found that Mr. Wanless's imprisonment for his felony conviction in a State-contracted, privately operated facility fell within the purview of section 5313 and therefore he was not entitled to payment of full disability compensation. It remains undisputed that Mr. Wanless was

---

[5] The Davis Correctional Facility is one of the CCA facilities with an Oklahoma DOC contract. As such, it is reasonable to conclude that the private facility is an agent of the State of Oklahoma, thereby making it a "State" prison for purposes of section 5313. *See Wanless*, 18 Vet.App. at 355-56 (Judge Greene dissenting); *see also generally* http://www.doc.state.ok.us/newsroom/annuals/2008/08ANNUAL.pdf (visited Aug. 6, 2009) ("The State of Corrections in Oklahoma Fiscal Year 2008"; listing Davis Correctional Facility, where Mr. Wanless has been incarcerated, as one of the private prisons with which Oklahoma DOC contracts).

convicted by the State of Oklahoma and is now incarcerated in the United States, at a minimum, at the behest of the State of Oklahoma. Moreover, there is no allegation that the Davis Correctional Facility was housing Mr. Wanless free of charge; rather, as stated above, it is clear that the State of Oklahoma, both now and at the time of Mr. Wanless's incarceration at Davis, expended and continues to expend funds to incarcerate these prisoners. *See Wanless*, 18 Vet.App. at 355-56 (Judge Greene dissenting); *see generally* http://www.doc.state.ok.us/newsroom/annuals/2008/08ANNUAL.pdf (visited Aug. 6, 2009) ("The State of Corrections in Oklahoma Fiscal Year 2008"; listing per diem expense to state per inmate). As such, the Board's reasons or bases were adequate to enable Mr. Wanless to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court.

### III. CONCLUSION

On consideration of the foregoing, the Board's December 8, 2006, decision is AFFIRMED.