# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-2074

CATHERINE A. SHEPHARD, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 15, 2013)                                      Decided February 27, 2013)

*Katrina J. Eagle*, of San Diego, California, for the appellant.

*Sarah W. Fusina*, of Washington, D.C., argued for the appellee. *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Gayle E. Strommen*, Deputy Assistant General Counsel; and *Purnima G. Boominathan*, Appellate Attorney, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and SCHOELEN and PIETSCH, *Judges*.

SCHOELEN, *Judge*: The appellant, Catherine A. Shephard, appeals through counsel a May 25, 2011, Board of Veterans' Appeals (Board) decision in which the Board (1) found that, from January 12, 2003, until November 13, 2008, the appellant was entitled only to payment of compensation commensurate with a 10% disability rating; (2) decided that an overpayment of compensation benefits was properly created; and (3) remanded the matter of whether the appellant is entitled to a waiver of a recovery of overpaid benefits for additional development. Record of Proceedings (Record or R.) at 3-9. Because the issue has been remanded by the Board, the appellant's eligibility for a waiver of recovery of overpaid benefits is not before the Court. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004). This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons stated below, the Court will affirm the Board's finding that the appellant was entitled only to payment of compensation commensurate with a 10% disability rating for the period from January 12, 2003 until November 13, 2008, because the appellant has failed to demonstrate that veterans subject to a reduction of compensation payments as a result of incarceration may, upon their release,

recoup the amounts withheld during their incarceration. However, the Court will vacate that part of the Board's decision that decided that an overpayment of compensation benefits was properly created, and remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Navy from December 1986 to January 1995. R. at 171. In July 1997, the VA regional office (RO) awarded the appellant a total disability rating effective November 1996 (R. 905-08), and, in April 2003, the RO revised the appellant's monthly compensation to $2,399, effective June 2003. R. at 853.

In September 2003, upon a database search, VA learned that the appellant had been imprisoned on a felony conviction in November 2002. R. at 844. Nine months later, in June 2004, the RO proposed to reduce the appellant's compensation to a monthly payment corresponding to a 10% disability rating pursuant to VA regulations governing compensation of incarcerated veterans. R. at 833; *see also* 38 C.F.R. § 3.665(a), (d)(1) (2004). The RO advised the appellant that the reduction in compensation "will result in an overpayment of benefits" and that the appellant would be provided "repayment information." *Id*. The RO also informed the appellant that if she believed the proposed reduction was inappropriate, she could request a personal hearing and VA "w[ould] arrange a time and place for the hearing." R. at 834. The appellant was not advised at this time that she could apportion any reduced compensation to her spouse or dependent.

On June 27, 2005, the RO reduced the appellant's compensation to a monthly payment corresponding to a 10% disability rating, as it had proposed, effective January 12, 2003. R. at 816-17. Until the date it reduced the appellant's benefit payment, VA electronically deposited the appellant's payment into bank accounts held jointly by the appellant and her former husband.[1] R. at 86-97, 102-119. Also on June 27, 2005, the RO advised the appellant that she may be entitled to apportion the reduced compensation to her dependents. R. at 816. There is no evidence, however, that the appellant requested any such apportionment. Finally, the RO promised the appellant further notice regarding the specific amount of the overpayment. *Id*.

---

[1] The appellant and her former husband married on December 11, 1992, and divorced on May 5, 2009. R. at 250-59.

In July 2005, the VA Debt Management Center advised the appellant that she owed VA $63,749.21. R. at 814. That same month, the appellant filed a Notice of Disagreement (NOD) with the RO's June 2005 decision. R. at 472. Construing the appellant's NOD as a request for waiver of indebtedness, the Committee on Waiver of Indebtedness (Committee) ruled that the appellant was "solely at fault in the creation of the overpayment." R. at 456. The Committee reasoned that the overpayment was the direct result of the appellant's failure to report her felony conviction and incarceration in a timely manner. *Id.*

The appellant was released from incarceration in November 2008. R. at 477. Thereafter, the appellant sought reinstatement of her full compensation, and she asked that VA withhold the "smallest amount possible" to pay back her overpaid benefits. R. at 348, 361. The appellant asserted that during her incarceration her former husband had withdrawn the overpaid benefits from their jointly held bank account and "kept using them" even though she "advised him several times that he was not entitled to these benefits." R. at 361. She also asserted that, before VA reduced her benefit payment, she had "advised VA that [she] was in prison but checks were still being sent." *Id.*

In January 2009, the appellant's full monthly compensation was reinstated. R. at 344-46. In a December 2009 report of contact between an RO official and the appellant's representative, the RO official noted that "the debt was too large because the file shows that [the RO] [k]new in 2004 that she was incarcerated and they should have stopped the award to minimize the debt." R. at 218. The official also stated that the RO continued to make payments because a private attorney requested a personal hearing on the appellant's behalf. *Id.* The official noted, however, that the attorney's "request should have been ignored because the private attorney didn't have [power of attorney] status [a]t that time." *Id.* Despite these notations, the RO's Statement of the Case affirmed the Committee's earlier decision that the overpayment was properly created. R. at 199.

In a March 2010 hearing before a decision review officer, the appellant stated that VA was first notified of her incarceration in January 2003. R. at 202. The appellant asserted that her former husband "knowingly kept the benefits every month," that she "never got any of that money," that her name was taken off of the bank account when VA reduced her benefit payments, and that her former husband filed for bankruptcy protection soon thereafter. R. at 203-05, 209. The appellant stated that in the time between her incarceration and the date her benefit payments were reduced "[n]umerous

3

calls were made" and "numerous letters" sent to VA to inform the Agency that her benefits payment was too high. *Id.*

The appellant's representative stated that during the appellant's incarceration a private attorney contacted VA asking that the VA benefits be continued and stating that the appellant would request a personal hearing. R. at 204. The appellant stated that she "was not aware of anything that went on with that." *Id.* The appellant's representative asserted that VA acted on the private attorney's request and continued to make excessive benefit payments even though the private attorney had no power of attorney over her affairs. *Id.* The appellant argued that she properly notified VA about her incarceration and that she "shouldn't be held responsible for something" over which she exercised no control. *Id.* Finally, she noted that she "could not go to hearings, because they, of course, were not court-ordered, as you are well aware," but if there had been "court-ordered hearings, the prison could have taken care of me." *Id.* She asserted, however, that she did "everything in her power" to notify VA that her benefits payments should be stopped, and that it is both not "my fault that they didn't stop them" and that it is not "fair that I be held responsible for something my ex-husband took." R. at 204-05.

On May 25, 2011, the Board remanded the waiver-of-indebtedness issue, but (1) found that, between January 12, 2003, and November 13, 2008, the appellant was entitled only to monthly payment of compensation commensurate with a 10% disability rating; and (2) affirmed the RO's decision that the overpayment was properly created. R. at 5, 7-8. The Board stated that, although VA continued to pay the appellant full monthly compensation for almost two years after it learned of her incarceration, VA's continued payments did not meet "the criteria of sole administrative error" set forth in 38 C.F.R. § 3.500(b)(2) (2012). R. at 7. The Board reasoned that "[a]ny administrative error by VA in not enacting the required reduction earlier may not be used to negate the validity of the debt where the Veteran had cause to know that benefit payments received were received in error." *Id*. This appeal followed.

## II. THE PARTIES' ARGUMENTS

The parties agree that the Board decision should be vacated and the matter remanded for failure to provide adequate reasons and bases for its determination that, because the appellant had

knowledge that VA continued to deposit payments in a joint account, the $63,749.21 debt was properly created. *See* Appellant's Brief (Br.) at 15; Secretary's Br. at 21-22. The parties disagree as to whether the appellant is now entitled to payment of the difference between the appellant's full monthly compensation and the amount to which her full compensation was reduced during her term of incarceration. *See* Appellant's Br. at 10-14; Secretary's Br. at 6-18.

The appellant maintains that the Secretary lacks the authority to retain the compensation withheld during her term of incarceration and that her entitlement to payment of all withheld funds upon release from incarceration is protected by statute. *See* Appellant's Br. at 8. In particular, the appellant submits that, in *Snyder v. Nicholson*, 489 F.3d 1213, 1218 (Fed. Cir. 2007), the U.S. Court of Appeals for the Federal Circuit held that section 5313(a)(1) of title 38, U.S. Code, does not alter a veteran's monthly compensation during her period of incarceration. Rather, according to the appellant, the *Snyder* court's reasoning supports the proposition that, upon release from prison, a veteran is entitled to recoup the compensation withheld during incarceration. *See* Appellant's Br. at 9-10. The Secretary responds that the *Snyder* court explicitly declined to reach the issue raised by the appellant, and the statutory language is clear that the compensation withheld during incarceration shall not be paid, irrespective of when payment is demanded. Secretary's Br. at 8-9.

The appellant also appears to argue, without support, that VA's failure to restore the benefits reduced during incarceration amounts to an unconstitutional enhancement of the criminal penalty underlying her felony conviction and violates the Due Process and Takings Clauses of the Fifth Amendment to the U.S. Constitution. *See* Appellant's Br. at 7-9, 12-14. In response, the Secretary asserts that the Due Process Clause does not prohibit a reduction of benefits; instead, it only requires that veterans be provided with notice and an opportunity to be heard before they can be deprived of their protected benefits. *See* Secretary's Br. at 16-17. In this regard, the Secretary argues that the appellant fails to explain how her due process rights were violated and that VA could not have violated her due process rights because it provided notice and an opportunity for a hearing on the reduction of her benefit payment. Secretary's Br. at 17. The Secretary did not address the appellant's unsupported assertion that VA's actions amount to an enhancement of the criminal penalty underlying her felony conviction or a violation of the Takings Clause.

5

### III. ANALYSIS

#### A. Legal Framework

The basic entitlement to disability compensation begins with a veteran's service-connected disability. *See* 38 U.S.C. § 1110 ("For disability resulting from personal injury suffered . . . in line of duty . . . the United States will pay to any veteran thus disabled . . . compensation as provided in [38 U.S.C. § 1114]"); *see also Snyder*, 489 F.3d at 1218; *Ferenc v. Nicholson*, 20 Vet.App. 58, 61 (2006). To grant an award on the basis of a veteran's service-connected disability, VA must assign a disability rating, which, in turn, it must use to set the veteran's disability compensation. *See Snyder*, 489 F.3d at 1218 (citing 38 U.S.C. §§ 1114, 1155). Pursuant to the veteran's award, VA renders monthly payments to the veteran, surviving spouse, or a qualifying dependent. *See* 38 U.S.C. § 101(13), (14).

However, in the event that a veteran receiving monthly payments is incarcerated for a felony conviction, a portion of his or her monthly compensation "shall not be paid . . . for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends." *See* 38 U.S.C. § 5313(a)(1), (e)(1). For a veteran whose disability rating exceeds 20%, she may expect to be paid compensation commensurate with a 10% disability rating during the designated period of incarceration. *See* 38 U.S.C. § 5313(a)(1)(A). All or part of the compensation not paid to a veteran may be apportioned to a spouse or qualifying dependent. *See* 38 C.F.R. § 3.665(e). Upon release from her term of incarceration, a veteran is entitled to resumption of payment of full disability compensation. *See* 38 C.F.R. § 3.665(i). In the event that a veteran's felony conviction is overturned on appeal, she is also entitled to the "restor[ation]" of the compensation withheld during incarceration. 38 C.F.R. § 3.665(m).

#### B. Statutory Interpretation

##### *1. Plain Language*

The question presented requires the Court to interpret section 5313(a)(1). "'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure

6

of the statute itself." *Wanless v. Shinseki*, 23 Vet.App. 143, 146 (2009), *aff'd*, 618 F.3d 1333 (Fed. Cir. 2010). "'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed.1992)).

> Section 5313(a)(1) explicitly commands that
>
> any person who is entitled to compensation or to dependency and indemnity compensation and who is incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony *shall not be paid* such compensation or dependency and indemnity compensation, for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends . . . .

38 U.S.C. § 5313(a)(1) (emphasis supplied). On its face, section 5313(a)(1) is clear. Disability compensation shall not be paid to certain incarcerated veterans for a designated period of their incarceration. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

The appellant's argument that the Secretary lacks authority to retain the withheld portion of her disability compensation even after her release from prison misunderstands the focus and direction of section 5313(a)(1). The statute's text concerns the "payment," and not the "award," of disability compensation, *see Snyder*, 489 F.3d at 1218 ("The *statutory limitation on payments* to an incarcerated veteran does not purport to change the monthly compensation *awarded* on the basis of the veteran's claim" (emphasis added)); *Ferenc*, 20 Vet.App. at 62 ("It is evident that 'compensation' is a distinct legal term from both 'rating' and 'service connection.'"). In addition, section 5313(a)(1) does not speak in terms of the timing of payments; rather, it directs that a veteran is not to be paid "for the period" of incarceration. 38 U.S.C. § 5313(a)(1).

Furthermore, the statute contains neither an implicit nor explicit command to pay, upon a veteran's release from incarceration, those sums previously reduced. Rather, section 5313(a)(1) acts as an affirmative prohibition on the Secretary's general obligation to pay a veteran's award of compensation. *See Ferenc*, 20 Vet.App. at 61 ("Under the statutory scheme, disability compensation benefits are paid to veterans . . . . However, if a veteran in receipt of compensation benefits is incarcerated for conviction of a felony, these **payments of compensation** are subject to reduction"

(emphasis in original)); *see also* 38 U.S.C. § 101(13) (defining "compensation" as a "monthly *payment* made by the Secretary to a veteran because of [a] service-connected disability" (emphasis added)). Thus, on a plain reading of the statute, the appellant's argument must fail.

## 2. The Snyder Decision

The appellant's attempt to apply the *Snyder* court's reasoning to the interpretive issue at bar is mistaken. As an initial matter, the *Snyder* court explicitly declined to reach the issue now before the Court. *See Snyder*, 489 F.3d at 1217 n.1 ("At oral argument, it was suggested that the amount of past-due benefits reduced under section 5313 is forever lost to [the veteran]. That issue is not before us, and we express no view on it."). Indeed, the appellant in *Snyder* did not assert entitlement to payment of reduced compensation upon release from incarceration. Rather, the appellant there was an attorney who claimed entitlement to attorney fees arising from a retroactive award of benefits granted to his incarcerated client. *See id*. at 1214-18; *see also* 38 U.S.C. § 5904(d)(1) (providing for the payment of attorney fees "out of past-due benefits").

Moreover, the *Snyder* court's reasoning does not support the interpretation of section 5313(a)(1) proffered by the appellant. The *Snyder* court explained that section 5313(a)(1) serves as a "withholding" mechanism, much like a "Social Security withholding" from an employee's "gross salary." *Snyder*, 489 F.3d at 1218. The *Snyder* court elaborated: "[J]ust as a Social Security withholding does not alter the person's gross salary, a section 5313(a)(1) withholding does not alter the incarcerated veteran's awarded compensation." *Id*. The *Snyder* court's reasoning does not imply, as the appellant would have it, that an incarcerated veteran is entitled to the equivalent of the difference between a "gross" and "net" salary upon release from prison. *See id*. at 1217 n.1. Rather, to carry the analogy further, the *Snyder* court merely suggested that an employee's various withholdings are calculated on the basis of her gross salary, but that she continues to receive only her net salary in exchange for eligibility for a host of taxpayer-funded benefits to which her withholdings contribute. *See id*. at 1218.

The appellant's interpretation also finds no refuge in the *Snyder* court's statement that "a right to receive payment may accrue while a veteran is not presently able to enjoy actual complete receipt of the funds represented by the final award." *Id.* at 1220. In this comment, the *Snyder* court merely acknowledged that, in particular instances, incarceration will not permanently preclude payment of

8

the disability compensation slated for reduction, such as when a veteran has a "spouse qualifying for apportionment," *Snyder*, 489 F.3d at 1219 (citing 38 U.S.C. § 5313(b)(1); 38 C.F.R. § 3.665(e) (2006)), or when an incarcerated veteran's conviction is overturned on appeal. *See* 38 C.F.R. § 3.665(m) (2006); *cf. Dixon v. Nicholson*, 20 Vet.App. 544, 549 (2006) ("If a veteran's felony conviction is 'overturned on appeal,' VA must restore any withheld disability compensation benefits (less the amount of any apportionment)." (quoting 38 C.F.R. § 3.665(m) (2006)). No faithful reading of the *Snyder* court's comment would lead to the conclusion that it established an unqualified right to repayment for all veterans subject to section 5313(a)(1) upon their release from incarceration. *Cf. Snyder*, 489 F.3d at 1220 ("[A] right to receive payment *may* accrue . . . ." (emphasis added)).

Accordingly, the appellant fails to demonstrate that the *Snyder* court's "accru[al]" comment is anything more than a careful restatement of the exceptions to section 5313(a)(1)'s general reduction command. The Court is similarly not convinced that the *Snyder* court's reasoning and holding deviate from the plain meaning of section 5313(a)(1) articulated above. Accordingly, the appellant's reading of *Snyder* must be rejected.

### 3. Legislative History

The appellant maintains that Congress's initial purpose in enacting section 5313(a)(1) was limiting education and training benefits to incarcerated veterans in order to curb disciplinary problems occasioned by such funds, and that it is unclear how Congress's focus shifted to disability compensation payments.[2] Appellant's Br. at 11 n.3. Irrespective of how Congress turned its attention to compensation payments and although the Court finds no ambiguity in the statute, it

---

[2] The House committee report that the appellant cites appears to refer to a bill considered by the U.S. House of Representatives Committee on Veterans' Affairs Subcommittee on Education, Training, and Employment, entitled "H.R. 1534, A Measure to Provide Limitations on the Payment of Educational Assistance to Incarcerated Veterans," later passed as the "Veterans' Rehabilitation and Education Amendments of 1980," Pub. L. 96-466. Like the appellant, the *Snyder* court suggests that this bill was related to the legislative intent behind section 5313(a)(1), *Snyder*, 489 F.3d at 1215-16, but this connection is not clear from the legislative materials available to the Court. *Cf.* H.R. REP. NO. 96-1155 (1980) (H.R. 7511 – the progenitor of section 5313(a)(1) – was passed as part of the "Veterans' Disability Compensation and Housing Benefits Amendments of 1980," Pub. L. No. 96-385).

"take[s] comfort in knowing that the legislative history also supports" the plain reading established above. *Wanless*, 618 F.3d. at 1337-38.

As this Court noted in *Wanless*, Congress expressed a "strong sense of responsibility to the public fisc" in promulgating section 5313(a)(1), and its "main stated objective [was] the avoidance of duplicative Government expenditures that would result in a windfall for those convicted of felonies."[3]  *Wanless*, 23 Vet.App. at 148-49.  After introducing House bill 7511 (H.R. 7511), Congressman Montgomery, the bill's principal sponsor and, at the time, the chairperson for the U.S. House of Representatives Committee on Veterans' Affairs' Subcommittee on Compensation, Pension, Insurance, and Memorial Affairs, remarked:

> "Mr. Speaker, the purpose of compensation is to replace the lost earning capability of a disabled veteran where the impairment is caused by a service-connected condition. I do not consider it unreasonable to recognize that individuals who are confined by our judicial system for commission of a serious offense against society are no longer available to the labor market. An economic detriment caused by a disability is not felt by such individuals during long periods of confinement.
>
> \*          \*          \*          \*
>
> "I do not see the wisdom of providing hundreds and thousands of tax free benefits to such individuals [referring to individuals serving long sentences for the commission of felonies] when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same individuals in penal institutions."

*Bolton v. Brown*, 8 Vet.App. 185, 192-93 (1995) (Ivers, J., concurring)  (quoting 126 CONG. REC. 26,118 (1980) (statement of Rep. Montgomery)).  Congressman Wylie, the ranking minority member of the Subcommittee on Compensation, Pension, Insurance, and Memorial Affairs stated:

> "In the case of imprisonment, when a prisoner is being fully supported by tax dollars that fund the penal institution, it becomes ludicrous to continue payment of benefits designed to help him maintain a standard of living.  Thus, I believe the reduced stipend of $60 a month is reasonable and, indeed, generous. Personally, I would stop all compensation during incarceration for a felony. But, this is a good compromise."

*Id*. (quoting 126 CONG. REC. 26,122 (1980)).

---

[3] The *Snyder* court, too, acknowledged Congress's concern over duplicative expenditures in enacting section 5313(a)(1). *See Snyder*, 489 F.3d at 1215 ("Congress recognized that [incarcerated] veterans were receiving benefits that were not offset to account for expenses, such as room and board, that were provided by the prisons.").

Based upon these statements of congressional intent, it is clear, as the Court observed in *Wanless*, that "if the taxpayers are financing a veteran's incarceration, it is contrary to the public good to also pay him full VA disability benefits." *Wanless*, 23 Vet.App. at 148. If, after her release from prison, the appellant had a right to receive the VA disability compensation "withheld" during her prison term despite the fact that taxpayer dollars were expended to feed, clothe, and house her during that period, section 5313(a)(1) would fail to fulfill Congress's intent to avoid duplicative spending. Postincarceration payments of withheld compensation would only delay, rather than eliminate, "a windfall for those convicted of felonies." *Wanless*, 23 Vet.App. at 148. Such an outcome is contrary to the congressional intent animating section 5313(a)(1) and will not be countenanced by this Court.

*4. Regulatory Framework*

The appellant's interpretation also departs from the logic of the VA regulations implementing section 5313(a)(1). As noted above, VA regulations provide for the resumption of full compensation upon a veteran's release from prison, *see* 38 C.F.R. § 3.665(i), *as well as* the "restor[ation]" of benefits previously withheld. 38 C.F.R. § 3.665(m). However, an incarcerated veteran is eligible for a restoration of benefits *only* if her "conviction is overturned on appeal." *Dixon*, 20 Vet.App. at 547.

As the Secretary reasons (Secretary's Br. at 14-15), the appellant's effort to grant the restoration of benefits to every veteran upon release from incarceration would moot the inquiry into the status of the conviction dictated by § 3.665(m). The Court will not introduce such confusion into a regulatory framework that is otherwise consistent with the precepts of section 5313(a)(1).

C. Constitutional Arguments

In her brief and during oral argument, the appellant suggested that the permanent withholding of VA disability compensation withheld during her period of incarceration constitutes a violation of the Due Process and Takings Clauses of the Fifth Amendment to the U.S. Constitution, and a constitutionally impermissible enhancement of her felony conviction. *See* Appellant's Br. at 7-9, 12-14. However, the appellant's arguments were stated perfunctorily, and she made little effort to describe how the reduction performed in this case violated the constitutional rights that she invokes. As the Supreme Court has counseled, Federal courts are disinclined to pass upon constitutional questions cast in abstract terms. *See Gov't & Civic Employees Organizing Comm., CIO v. Windsor*,

11

353 U.S. 364, 366 (1957). This Court's practice is consistent with the Supreme Court's command, *see Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (the Court requires the appellant to plead the allegation of error with some particularity), and, as a result, the appellant's constitutional challenges must be denied.[4] *See Brewer v. West*, 11 Vet.App. 228, 236-37 (1998); *Villeza v. Brown*, 9 Vet.App. 353, 357-58 (1996), *appeal dismissed*, 114 F.3d 1206 (Fed. Cir. 1997); *United States v. M. Genzale Plating, Inc.*, 723 F.Supp. 877, 885 (E.D.N.Y. 1989) ("Vague assertions of unfairness on the part of the government, without more, cannot be molded into constitutional violations.").

### D. Reasons and Bases

The parties concur that a remand is in order for the Board to provide adequate reasons and bases for its conclusion that the $63,749.21 debt was properly created. *See* Appellant's Br. at 15; Secretary's Br. at 21-22; *see also Allday v. Brown*, 7 Vet.App. 517, 527 (1995). The Court agrees.

Citing to 38 C.F.R. § 3.500(b)(2), the Board explained that the debt created in this case could only be deemed improper if it is shown that "VA was solely at fault for the erroneous payment of excess benefits." R. at 6. The Board found that the appellant had not demonstrated that the debt was improperly created because she knew or should have known of the erroneous payments to her account. R. at 7. The Board stated that "[a]ny administrative error by VA in not enacting the required reduction earlier may not be used to negate the validity of the debt where the Veteran had cause to know that benefits received were received in error." *Id*.

The Board, however, failed to explain why a reduction in *payment* of disability compensation pursuant to section 5313(a)(1) and § 3.665(a), (d) is governed by § 3.500(b)(2), which controls the "effective date of reduction or discontinuance of an "*award* of [] compensation." *Cf. Snyder*, 489 F.3d at 1218 ("The *statutory limitation on payments* to an incarcerated veteran does not purport to change the monthly compensation *awarded* on the basis of the veteran's claim." (emphasis added)). As discussed above and as the Secretary conceded at oral argument, reductions or discontinuances of an *award* are distinct from reductions in *payment* of awarded compensation, and the Board's

---

[4] Of note, the provisions of section 5313 became effective on October 7, 1980, more than 20 years prior to Ms. Shephard's incarceration, and Ms. Shephard, like all persons "dealing with the Government[,] is charged with knowledge of federal statutes and lawfully promulgated agency regulations." *See Morris v. Derwinski*, 1 Vet.App. 260, 265 (1991).

failure to address this distinction renders its statement inadequate for judicial review. *See Allday*, 7 Vet.App. at 527.

Additionally, at oral argument, and in her hearing before a decision review officer, the appellant stated that she could not exercise her right to a hearing prior to the reduction of her benefit payment because prison rules did not allow her to attend a VA hearing. R. at 204. She insinuated that had she been given a hearing, she would have told VA to immediately reduce her payment. *Id.* The Board's failure to address this allegation, too, was a violation of its duty to provide adequate reasons and bases. *See Robinson*, 21 Vet.App. at 552. A remand is therefore in order for the Board to review the legal and factual issues identified above and incorporate an analysis of such issues into a reconsideration of the propriety of the creation of the overpayment.[5]

On remand, the appellant is free to submit additional evidence and argument on the remanded matter, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

---

[5] The Court notes that VA failed to notify the appellant of the opportunity for apportionment until it reduced the appellant's benefit payments. *See* R. at 814-17. Although the Court makes no decision on the issue as it was not raised by either party in their briefs, *see Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."), *aff'g sub nom. Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief), VA is urged to review its practice to ensure that this is not a systemic problem. *See* 38 C.F.R. § 3.665(a), (f), (e)(1) (requiring that "VA [] inform a person whose benefits are subject to [a] reduction of the rights of the person's dependents to an apportionment while the person is incarcerated.")

## IV. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record, the May 25, 2011, Board decision is AFFIRMED IN PART and VACATED IN PART, and the vacated matter is REMANDED for further proceedings consistent with this decision.

DATED:  February 27, 2013

Copies to:

Katrina J. Eagle, Esq.

VA General Counsel (027)