# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-1787

DONALD MATHEWS, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided          October 14, 2016)

*Glenn R. Bergmann*, of Bethesda, MD, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Drew Silow*, Acting Deputy Chief Counsel; and *Monique A.S. Allen*, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, PIETSCH, and BARTLEY, *Judges*.

BARTLEY, *Judge*: Veteran Donald Mathews appeals through counsel a March 30, 2015, Board of Veterans' Appeals (Board) decision denying service connection for post-operative residuals of a neck tumor. Record (R.) at 2-29. This appeal is timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This case was referred to a panel to consider whether the Board may sub silentio incorporate its reasons or bases for a finding made in a prior remand order into a subsequent Board decision. For the reasons that follow, the Court will set aside the March 2015 Board decision and remand the matter for further development, if necessary, and readjudication consistent with this decision.

## I. FACTS

Mr. Mathews served on active duty in the U.S. Navy from July 1966 to February 1970, including service in combat in Vietnam. R. at 832, 951.

In July 2002, Mr. Mathews was referred to a private otolaryngologist, Dr. Ralph Cepero, for a left neck lesion that a biopsy revealed to be "poorly differentiated carcinoma." R. at 880. The referring physician noted a "history of exposure to Agent Orange" that "may be related to the etiology of this malignant lesion," which Dr. Cepero described as "a skin primary." *Id.* Later that month, Mr. Mathews underwent another biopsy, which was forwarded to Dr. Lester E. Wold, a physician in the Mayo Clinic's Division of Anatomic Pathology. R. at 1029; *see* R. at 1031-32. Dr. Wold examined the specimen and opined:

> I concur entirely with your assessment that the histologic and cytologic features present in this biopsy are those of a malignant neoplasm. The differential diagnosis, in my opinion, largely rests between metastatic carcinoma and melanoma. In this regard, I have done immunostains for a variety of keratins . . . , all of which are negative. Imunnostains for S100 protein are positive and show nuclear staining. . . . On balance, I believe it is best to consider this metastatic neoplasm most compatible with melanoma.

R. at 1029.

The mass on the veteran's neck was resected later in July 2002, R. at 892-93, and sent for pathologic examination, R. at 897-98. The surgical pathologist, Dr. Kris Challapelli, diagnosed a "large cell anaplastic pleomorphic malignant tumor, metastatic to skin and subcutaneous tissue, neck," and stated: "The histological features and the immunohistochemical findings . . . suggest the possibility of primary of a renal cell carcinoma or thyroid carcinoma. Other rare possibilities include mesothelioma, synovial or epithelioid sarcoma. Melanoma may be possible but less likely. Further clinical correlation is requested." R. at 897.

In August 2002, Mr. Mathews visited the West Texas Cancer Center to discuss further treatment options. R. at 929-30. After reviewing Dr. Wold's report and prior computed tomography (CT) scans, Dr. T.K. George stated that "[t]he most accurate diagnosis is undifferentiated malignancy, favoring carcinoma," and proposed a course of chemotherapy. R. at 930. Dr. George indicated that Mr. Mathews desired a second opinion from a pathologist at the University of Texas's MD Anderson Cancer Center and agreed to arrange a consultation for the veteran. *Id.*

2

The next month, Dr. Alberto G. Ayala at the MD Anderson Cancer Center conducted the requested pathologic examination. R. at 921, 925. Dr. Ayala diagnosed "unclassified malignant neoplasm" and explained that the tumor was "difficult to classify" due to conflicting immunohistochemical results. R. at 921. He indicated that a colleague, Dr. Victor Prieto, also reviewed the histology results and "suspects melanoma, but can[]not go any farther." R. at 925.

In January 2003, Mr. Mathews's primary care physician, Dr. Michael Shelton, opined that the veteran had "a history of being exposed to Agent Orange while serving in South Vietnam and it appears that this could be related to the etiology of this malignant lesion from a skin primary." R. at 920.

In June 2003, Mr. Mathews filed a claim for service connection for neck cancer, among other conditions. R. at 844-57. In September 2003, a VA regional office (RO) denied the claim because the evidence did not indicate that he had a type of cancer that VA recognized as presumptively related to herbicide exposure. R. at 809-13. Mr. Mathews filed a timely Notice of Disagreement as to that decision, R. at 795-96, and submitted a November 2003 letter from his private treating oncologist, Dr. Pankaj Khandelwal, explaining that the original pathology report indicated an anaplastic pleomorphic tumor involving the subcutaneous tissue of the neck and that "[d]ifferential diagnoses include synovial or epithelioid sarcoma," R. at 773. In December 2003, the RO issued a Statement of the Case (SOC) continuing to deny the claim. R. at 777-94.

In February 2004, Dr. Wold reviewed documents that Mr. Mathews sent him and opined that "the most likely primary site for [the] tumor is the upper aerodigestive tract." R. at 763. Dr. Wold indicated that this primary site "correspond[ed]" to respiratory cancers, such as cancers of the lung, bronchus, larynx, or trachea, and stated: "Without the identification of the primary tumor[,] it is difficult to be dogmatic in this regard, but the morphology would fit." *Id*. Later that month, Dr. Wold clarified that he believed that the tumor was "an undifferentiated carcinoma." R. at 733. Also in February 2004, another private physician, Dr. Michael Shelton, submitted a letter indicating that pathology reports for the left neck tumor had "not established a definitive diagnosis." R. at 727.

Mr. Mathews perfected his appeal to the Board in June 2004, arguing that he should be given the benefit of the doubt and granted service connection for the postoperative residuals of the left neck tumor because of the uncertainty as to the type and primary site of his cancer. R. at 755-56.

3

In January 2007, Mr. Mathews asked Dr. Wold if the resected tumor could have been classified as a granular cell tumor. R. at 581-83. Dr. Wold responded: "Nearly all granular cell tumors are benign. This tumor, in my opinion, show morphologic features of a malignancy. Although the immunostains do not exclude the possibility of granular cell tumor, the morphology does." R. at 581. In response to a follow-up inquiry later that month, Dr. Wold stated:

> I am aware of the differential diagnosis of "malignant granular cell tumor." Most of the tumors which were previously classified as "malignant granular cell tumor" have now been reclassified as alveolar soft part sarcoma. The tumor I reviewed did not have the typical crystal[l]ine cytoplasmic structures commonly seen in alveolar soft part sarcoma. Unfortunately I am left with an unsatisfying diagnosis of "malignant neoplasm."

R. at 579.

Following a January 2007 Board hearing, R. at 560-73, the Board in May 2007 remanded the claim for further development. R. at 505-15. The Board noted the "inconclusive opinions regarding the diagnosis, primary [s]ite, and origins of the malignant tumor" and concluded that remand was required to "obtain samples of the malignant tumor and to thereafter forward them to a panel of VA oncologists" to resolve those issues. R. at 509. In the remand instructions, the Board specifically ordered the Appeals Management Center (AMC) to "make arrangements with an appropriate VA medical facility for the veteran's claims file and tissue sample to be reviewed by a *panel of three oncologists,*" who could provide "*consensus answers*" to the outstanding medical questions in the case. R. at 510 (emphasis in original).

The AMC subsequently attempted to assemble a panel of three compensation-certified oncologists within Mr. Mathews's local Veterans Integrated Service Network (VISN) to provide the ordered opinion, but was informed by the Big Spring, San Antonio, and El Paso VA Health Care Systems that they could not comply with that request.[1] R. at 382. In July 2009, an AMC "coach" emailed the AMC director to inform him that they were "able to get the private exam report, but not a sample of the tumor," and that "the VAMCs [(VA medical centers)] in that VISN do not have 1

---

[1] The relevant VISN, the VA Heart of Texas Health Care Network, is comprised of 7 VA health care systems, 5 VAMCs, 19 VA outpatient clinics, 29 community-based outpatient clinics, and 13 Vet Centers. *See VISN 17: VA Heart of Texas Health Care Network*, http://www.va.gov/directory/guide/region.asp?ID=1017 (last visited Aug. 25, 2016).

oncologist, let alone 3." R. at 381. The coach inquired whether there had been "any word from [the Board]" regarding the terms of the remand order. *Id.* Later that month, another AMC employee asked the coach if the Board member had "amended the remand yet?" R. at 380. The coach responded: "[I]t does have to be an oncologist, but it doesn't have to be a panel of 3." *Id.*; *see also* R. at 379 (July 2009 AMC email: "We have gotten some adjustment to the . . . Remand from [the Board]. The exam, review and opinion can be made with one oncologist, rather than a panel of 3 oncologists."). The AMC then reached out to and was rebuked by the Dallas VA Health Care System. R. at 361.

Ultimately, the AMC assigned the case to a private physician, Dr. Maria Chona Aloba, at the El Paso Cancer Treatment Center, who provided an opinion in October 2009. R. at 333-34, 346-49. Dr. Aloba reviewed the claims file and opined that the likely histopathology and pathologic diagnosis of the resected tumor was undifferentiated carcinoma; it was not likely that the tumor was Hodgkin's disease, chronic lymphocytic leukemia, multiple myeloma, non-Hodgkin's lymphoma, soft tissue sarcoma, or cancer of the lung, bronchus, larynx, or trachea; it was not likely that the resected tumor was the primary tumor or was taken from the site of origin; the available evidence did not point toward a likely site of origin; and, based on that evidence, she could not determine the likelihood that the tumor was caused or aggravated by military service. R. at 333. The next month, the AMC issued a Supplemental SOC (SSOC) continuing to deny the claim. R. at 334-45.

In December 2009, Mr. Mathews sent a letter to the AMC director that referenced the AMC's difficulties finding a VAMC with three oncologists on staff who could provide the requested opinion and stated: "I found it not hard at all to locate a [VAMC] with staff oncologist on board that in fact, specializes in head and neck cancers so let me lead you to the [VAMC] in Puget Sound." R. at 314. Mr. Mathews attached to this letter a printout from VA's website listing oncology staff, which listed nine medical professionals under "Medical Oncology" or "Otolaryngology." R. at 323.

In December 2011, the Board remanded the claim because it found that (1) VA had not satisfied its duty to assist because it had not asked the veteran for authorization to release a tissue sample of the resected tumor; and (2) Dr. Aloba's opinion was inadequate because it did not contain adequate supporting rationale. R. at 245-56. The Board additionally noted:

In October 2009, a single oncologist reviewed the claims file and provided answers to the Board's questions regarding the likely histopathology, diagnosis, and primary site or origin of the [v]eteran's resected neck tumor. While only one oncologist provided these answers and not a panel of three, the oncologist was qualified to provide such opinions, as the subject matter she addressed was within her area of expertise. Thus, the [v]eteran was not prejudiced by the opinions in the October 2009 report being made by only one oncologist, rather than a panel of three oncologists, and the Board's remand instructions in this respect were substantially complied with.

R. at 249.

Pursuant to that remand order, a new VA medical opinion was obtained in April 2013. R. at 168-70. A registered nurse, Monica C. Rupp, reviewed the veteran's claims file and opined that the claimed condition was less likely than not incurred in or caused by service. R. at 168-69. Later that month, Mr. Mathews challenged the adequacy of that opinion and submitted a medical journal article about epithelioid sarcoma. R. at 146-54.

The Board remanded the claim again in June 2013, finding that (1) VA had not satisfied its duty to assist because the AMC had not attempted to obtain a tissue sample of the resected tumor after receiving Mr. Mathews's authorization to do so; and (2) Ms. Rupp's April opinion was inadequate because it lacked adequate supporting rationale. R. at 135-42. The AMC attempted to obtain the tissue sample in December 2013, but was informed that the medical facility would not release it. R. at 114-16. The AMC was, however, able to obtain hematoxylin and eosin stain[2] slides, which it promised to forward to the Albuquerque VAMC. R. at 114.

In January 2014, Dr. James Lin, a staff physician in the hematology/oncology section at the Albuquerque VAMC, provided an opinion on Mr. Mathews's cancer. R. at 110-11. After reviewing the claims file, Dr. Lin opined that, based on the original pathology report, the tumor was not likely a sarcoma of any kind, including synovial or epithelioid sarcoma, and was most compatible with a melanoma. R. at 110-11. He stated that, because VA does not list melanoma as a cancer that is presumptively related to herbicide exposure, it was less likely than not that the veteran's melanoma was related to service. R. at 110. Dr. Lin further indicated that Dr. Aloba's and Dr. Khandelwal's

_____

[2]Hematoxylin and eosin staining is a histological tool used to examine tissues, including to diagnose cancer. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1762 (32d ed. 2012).

diagnoses were based on preliminary pathology reports and should be disregarded because they are inconsistent with the final pathological report that indicated that the most likely diagnosis was malignant melanoma. *Id*. Dr. Lin also stated that it would be speculative to identify the primary site of the melanoma because the veteran's primary site had not manifested in the more than 10 years since the resection and melanoma is "one of the least predictable malignancies in terms of . . . the site of metastasis." R. at 111.

In June 2014, the Board remanded the claim because the record did not reflect that Dr. Lin had reviewed the stain slides. R. at 85-91. Dr. Lin provided an addendum opinion in October 2014 in which he clarified that he did not have access to a tissue sample or slides when he wrote the original opinion. R. at 59. He indicated that the pathology slides had "been reviewed by our pathologists" at the Albuquerque VAMC and that the diagnosis "from our pathologist is 'metastatic neoplasm most compatible with melanoma,'" the "same as the original diagnosis from the outside institution." *Id*. Dr. Lin stated that he was not amending his opinion as his diagnosis had not been altered by the pathologic review. *Id*. He also remarked that a recent paper summarizing a pilot study of 100 veterans enrolled in the Agent Orange registry at the Washington, DC, VAMC had found that there was no increase in the incidence of melanoma among those veterans as compared to the general population. *Id*. He therefore opined that it was less likely than not that Mr. Mathews's melanoma was caused by herbicide exposure in Vietnam. *Id*. The AMC subsequently issued an SSOC continuing to deny the claim, R. at 40-53, and Mr. Mathews responded by challenging the adequacy of Dr. Lin's addendum opinion on various grounds, R. at 33-35, 38-39.

In January 2015, the Board issued the decision currently on appeal. R. at 2-29. At the outset, the Board found that VA had satisfied its duty to assist and that there had been substantial compliance with the prior remand orders because "the limits of current medical knowledge have been exhausted" in attempting to diagnose and identify the primary site of the veteran's cancer. R. at 6-8. The Board then concluded that Mr. Mathews was not entitled to service connection for post-operative residuals of a neck tumor on either a presumptive or direct basis because the evidence of record preponderated against finding that he had a disease that VA presumes to be associated with herbicide exposure or a link between his neck tumor and service. R. at 20-29. This appeal followed.

## II. ANALYSIS

### A. Incorporation of Reasons or Bases from Prior Board Remand

Mr. Mathews argues, inter alia, that the Board provided inadequate reasons or bases for its finding that the AMC had substantially complied with the terms of the Board's prior remand orders. Appellant's Brief (Br.) at 27-28. Specifically, he contends that the Board did not adequately explain why an opinion from a panel of three VA oncologists was no longer necessary to decide his claim, as specified in the May 2007 Board remand. *Id*. (citing R. at 509-10). The Secretary responds that the Board was not required to address that question in its most recent decision because the Board adequately explained in its December 2011 remand order that the veteran would not be prejudiced by an opinion by a single oncologist who is competent and qualified to address the matter. Secretary's Br. at 11, 16 (citing R. at 249). In reply, Mr. Mathews asserts that there is no legal authority that permits the Board to sub silentio incorporate its reasons or bases from a prior remand order into a later decision and, even if there were, those reasons or bases were inadequate because the Board did not explain why the AMC's search for compensation-certified oncologists who could comprise the requested panel was geographically limited to a single VAMC or VISN. Reply Br. at 7-8.

A remand by the Board confers on the claimant a legal right to compliance with the remand order. *Stegall v. West*, 11 Vet.App. 268, 271 (1998). Substantial compliance with the remand order, not strict compliance, is required. *Donnellan v. Shinseki*, 24 Vet.App. 167, 176 (2010); *Dyment v. West*, 13 Vet.App. 141, 147 (1999). As with any finding on a material issue of fact and law presented on the record, the Board must support its substantial compliance determination with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that finding and facilitates review in this Court. 38 U.S.C. § 7104(d)(1); *Wanless v. Shinseki*, 23 Vet.App. 143, 151-52 (2009), *aff'd*, 618 F.3d 1333 (Fed. Cir. 2010); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

8

In May 2007, the Board determined that Mr. Mathews's claim contained issues so medically complex that it was necessary to assemble a panel of three oncologists to review tissue samples of the resected tumor to reach a "consensus" regarding the proper diagnosis and primary site of the veteran's cancer, among other questions. R. at 509-10 (emphasis omitted). More than nine years and three Board remands later, VA has still not obtained the ordered opinion from a three-oncologist panel, and the Board in its most recent decision did not explain why such an opinion was no longer necessary. Absent such an explanation, neither the veteran nor the Court can discern the precise basis for the Board's finding that the AMC had substantially complied with the May 2007 remand order, rendering inadequate the Board's reasons or bases for that finding. *See Gilbert*, 1 Vet.App. at 52.

Although the Secretary is correct that the Board in its December 2011 remand order stated that, despite the instructions in the May 2007 remand order, the veteran would not be prejudiced by an opinion from "a single oncologist" so long as the oncologist was "qualified to provide such opinions," R. at 249, that statement does not, as the Secretary alleges, cure the inadequacy in the Board's reasons or bases for its most recent decision.

The Court holds that the Board is not permitted to sub silentio incorporate its reasons or bases from a prior remand order into a later decision. The Secretary has not cited any legal authority, nor is the Court aware of any, that allows the Board to eschew section 7104(d)(1) in that manner. To the contrary, the Court suggested in *Castellano v. Shinseki*, 25 Vet.App. 146, 160 (2011), that the Board would be required to provide reasons or bases for "its previous determination on a matter" in each subsequent Board decision, either by addressing it anew, "largely recycl[ing]" its prior reasons or bases, or "replicat[ing] the language it employed previously."

Furthermore, all of the Board's findings in non-final remand orders are insulated from judicial review because remand orders are not appealable to this Court. *See Forcier v. Nicholson*, 19 Vet.App. 414, 425-26 (2006) ("A claimant seeking to appeal before this Court the Secretary or the Board's failure to fulfill their *Stegall* duties must, however, first obtain a *final* Board decision. . . ." (emphasis added)); *see also Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2016) ("A remand is in the nature of a preliminary order and does not constitute a final decision of the Board."). The Court has never stated, however, that

9

findings in Board remand orders that are unfavorable to the appellant are final and binding.  Such a conclusion would be antithetical to the pro-claimant veterans benefits system and, absent some indication that Congress intended to make findings in Board remand orders binding and unreviewable, the Court will not impose such a limitation.  *See Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 671-73 (1986) (noting the "strong" presumption of reviewability of agency action, which may be overcome by evidence of, inter alia, specific congressional intent to preclude judicial review); *see also Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) ("In the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight.").

It is incumbent upon the Board, therefore, to provide or reiterate reasons or bases for unfavorable findings made in prior remand orders–assuming those reasons or bases still apply, given that new evidence or argument may have been submitted in the interim, *see Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); 38 C.F.R. §§ 19.37, 20.1304(a)–so that they become part of a final Board decision and subject to appellate review.  Its failure to do so constitutes a reasons or bases error.

Like all reasons or bases errors, however, this one is subject to review for prejudice. 38 U.S.C. § 7261(b)(2); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (noting that the statute requiring this Court to "take due account of prejudicial error [] requires the Veterans Court to apply the same kind of 'harmless error' rule that courts ordinarily apply in civil cases").  The Court holds that the Board's error is prejudicial in this case.

The Board in December 2011 found that the veteran was not prejudiced by a single-oncologist opinion, as opposed to the ordered three-oncologist opinion, because the chosen oncologist, Dr. Aloba, "was qualified to provide such opinions, as the subject matter she addressed was within her area of expertise." R. at 249.  Given that VA is presumed, when obtaining a medical opinion, to select a competent medical professional who is qualified to answer the specific medical questions necessary to decide a claim, it must be presumed that the Board in May 2007 determined that, due to the medical complexity of the issues involved, a medical opinion from a panel of three *competent* oncologists was required to decide the claim.  *See Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013)  ("VA benefits from a presumption that it has properly chosen a person who is

10

qualified to provide a medical opinion in a particular case."); *Wise v. Shinseki*, 26 Vet App. 517, 525 (2014) ("It is presumed that VA followed a regular process that ordinarily results in the selection of a competent medical professional."). The Court, therefore, cannot at present say that the Board adequately explained how having one competent oncologist assess the veteran's tumor could satisfy the Board's May 2007 remand order that, due to medical complexity and the resultant need for a "consensus" on the issue, three competent oncologists were needed to assess the tumor. Its failure to produce an adequate statement of reasons or bases in the decision here on appeal is not harmless error.

Accordingly, the Court concludes that the Board provided inadequate reasons or bases in its decision currently on appeal for its finding that the AMC had substantially complied with the Board's prior remand orders.[3] *See Gilbert*, 1 Vet.App. at 52. Remand is therefore warranted so that the Board can adequately address that issue.[4] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

## B. Other Arguments

Mr. Mathews also argues that the Board clearly erred in finding that Dr. Lin's January 2014 opinion and October 2014 addendum were adequate for adjudication purposes because the pilot study that Dr. Lin relied on was flawed or incomplete in several respects. Appellant's Br. at 15-20; Reply Br. at 1-2. Specifically, the veteran challenges the scientific foundation of the study itself–i.e., the characteristics of the study population, Appellant's Br. at 17-18; Reply Br. at 1-2 –and the accuracy of Dr. Lin's representation of the study's conclusions–i.e., the definitiveness and scope

---

[3]To be clear, the Court does not conclude that the Board is prohibited from finding substantial compliance with its May 2007 remand order unless it obtains an opinion from a panel of three oncologists or that the AMC's efforts to this point did not necessarily constitute substantial compliance with that remand order. It is only to say that the Board was required, but failed, to explain its substantial compliance finding in light of its apparent lack of adherence with the specific terms of the May 2007 remand order.

[4]Given this disposition, the Court need not address Mr. Mathews's other reasons-or-bases arguments, which could not result in a remedy greater than remand. Appellant's Br. at 23-30; Reply Br. at 5-9. Likewise, the Court declines to address Mr. Mathews's other challenges regarding the Board's alleged lack of substantial compliance with prior Board remand orders, because the Board necessarily will readjudicate that issue on remand. Appellant's Br. at 20-23; Reply Br. at 3-5.

11

of those conclusions, Appellant's Br. at 18-19. However, because the study is not part of the record on appeal, the Court cannot meaningfully review those allegations of error. As such, those arguments are best addressed by the Board on remand and the Court will not rule on them at this time. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (noting "the general rule that appellate tribunals are not appropriate fora for initial fact[]finding").

### III. CONCLUSION

Upon consideration of the foregoing, the March 30, 2015, Board decision is SET ASIDE and the matter is REMANDED for further development, if necessary, and readjudication consistent with this decision.