# United States Court Of Appeals
# for the Federal Circuit

---

**WILLIAM H. WANLESS,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2010-7007

---

Appeal from the United States Court of Appeals for Veterans Claims in 07-1501, Judge Robert N. Davis.

---

Decided: September 10, 2010

---

ROBERT K. KRY, MoloLamken LLP, of Washington, DC, argued for claimant-appellant.

JAMES SWEET, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN HOCKEY, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIN J. SENDEK, Staff Attorney,

Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before LOURIE, BRYSON, and GAJARSA, *Circuit Judges.*

GAJARSA, *Circuit Judge.*

The issue before this court is one of statutory construction, specifically the construction of 38 U.S.C. § 5313 (1993). This statute reduces the benefits of veterans who are convicted of felonies and are "incarcerated in a Federal, State, or local penal institution." William H. Wanless is an incarcerated veteran whose disability benefits were reduced pursuant to § 5313. Upon transferring from a state-operated prison to Davis Correctional Facility ("Davis"), a privately owned prison operated by the Corrections Corporation of America, Mr. Wanless requested full reinstatement of his disability benefits. His request was denied by the Board of Veterans' Appeals (the "Board") and the Veterans Court. *See Wanless v. Shinseki*, 23 Vet. App. 143 (2009). Mr. Wanless subsequently appealed to this court. Because the Veterans Court properly construed § 5313 to include penal institutions that are privately operated, yet state-contracted, we affirm.

## BACKGROUND

Mr. Wanless served on active duty in the United States Army from September 1979 to November 1981. *Id.* at 144. During his service, he suffered service-connected injuries, including enucleation of the right eye, chronic lumbar strain with degenerative disc disease, tinnitus, high-frequency hearing loss, and residuals of a cervical strain. *Id.* The Department of Veterans Affairs ("VA") granted Mr. Wanless $808 per month as disability compensation for his service-connected injuries. *Id.* at 145.

On January 15, 1993, the Payne County District Court in Oklahoma convicted Mr. Wanless of first degree murder for the death of his wife. For this felony, he was sentenced to incarceration in a penitentiary for life without parole. *Id.* at 144. Upon receipt of the final sentencing order, the Veterans Administration ("VA") informed Mr. Wanless that, pursuant to § 5313(a)(1), his disability rating was reduced to ten percent and his monthly disability compensation would be reduced from $808 to $85. *Id.*

In 1998, Mr. Wanless was transferred from a state-operated prison to Davis, a prison owned and operated by the for-profit company, Corrections Corporation of America, under contract with the Oklahoma Department of Corrections.[1] Shortly after his transfer, Mr. Wanless sought reinstatement of his benefits contending that he was "*no longer* in a facility which falls under the parameters of § 5313."

The VA denied Mr. Wanless's claim. It reasoned that "[t]he fact that [he was] incarcerated in the Davis Correctional Facility and that it is administered by Corrections Corporation of America, does not change [the] *fact that [he was] imprisoned following [his] conviction of a felony*." Mr. Wanless filed a "Notice of Disagreement" and appealed the decision to the Board. The Board concluded that Mr. Wanless was "a prisoner in accord with the life imprisonment sentence that was imposed . . . by an Oklahoma state court judge in accordance with Oklahoma state law." The Board further stated that merely because "the State of Oklahoma has decided to allow for the

---

[1] The parties disagree about the exact date of Mr. Wanless's transfer from the State-operated prison to Davis. The record indicates that Mr. Wanless was transferred sometime in early 1998.

private management of a penal facility under a contract does not serve to remove the veteran's felony conviction, nor does it alter his status as a prisoner of the State of Oklahoma." According to the Board, "[i]t is this status as a convicted felon in a state prison that absolutely prohibits the payment of full disability compensation." The Board thus affirmed the denial of Mr. Wanless's claim, holding that "[t]he veteran is not entitled to payment of full disability compensation while incarcerated for the commission of a felony."

Mr. Wanless appealed the Board's decision to the Veterans Court. It remanded the case to the Board, finding that the Board had failed to analyze any state laws or contractual provisions that bear on whether Davis qualified as a "State . . . penal institution" within the meaning of § 5313. On remand, the Board cited a VA General Counsel opinion, which stated that:

> [c]onstruing [§] 5313(a)(1) as not applying to a convicted felon whom the State, pursuant to a contract between the State and a private corporation, has incarcerated in a privately owned and operated facility rather than a State-owned penal institution would thwart Congress' clear purpose for the reduction in benefit payments.

J.A. 748. After a thorough analysis, the General Counsel had concluded that "a correctional facility owned and operated by a private corporation pursuant to a contract with a State department of corrections responsible within a State for the incarceration of convicted felons is incarceration in a State penal institution within the meaning of section 5313." J.A. 749. The Board concluded once more that Mr. Wanless was rightfully denied full disability benefit compensation pursuant to § 5313 because he was "incarcerated in a State penal institution for VA

purposes under the felony conviction sentence imposed in January 1993." Mr. Wanless appealed again to the Veterans Court.

On appeal, the Veterans Court found that "[t]he plain language of section 5313 does not explicitly include or exclude private prisons under State contract from the list of incarceration facilities." *Wanless*, 23 Vet. App. at 147. Because the statute was silent, the Veterans Court examined its structure and legislative history. The Veterans Court determined that "throughout the statute, the emphasis is on a veteran's 'incarceration,'" *id.* at 147, and "[n]othing in the legislative history suggests that Congress was concerned about limiting [§] 5313 so as to not affect veterans who are incarcerated in privately run, State-contracted penal institutions," *id.* at 148-49.

Turning to the General Counsel's opinion, the Veterans Court noted that it was "entitled to respect to the extent it has 'the power to persuade.'" *Id.* at 150 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Veterans Court then determined that the General Counsel's opinion relied upon sound reasoning and was "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 151. Given the statute's language, its legislative history, and the General Counsel's opinion, the Veterans Court affirmed the Board's decision and concluded that privately owned and operated prisons contracted by the state, such as Davis, fell within the ambit of "State . . . penal institution" pursuant to § 5313. Mr. Wanless filed a timely appeal to this court.

## DISCUSSION

This court's jurisdiction to review decisions by the Veterans Court is limited. We have exclusive jurisdiction "to review and decide any challenge to the validity of any

statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (2006). Absent a constitutional issue, however, we lack the jurisdiction to "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

On appeal, Mr. Wanless argues that the Veterans Court improperly construed the prior version of § 5313 to include privately operated prisons contracted by the state. His argument is a legal challenge to the Veterans Court's interpretation of § 5313. We review such a legal challenge de novo. *Id.* § 7292(d)(2); *see also Glover v. West*, 185 F.3d 1328, 1331 (Fed. Cir. 1999).

Until it was amended effective December 22, 2006, § 5313 stated:

> (a)(1) To the extent provided in subsection (d) of this subsection, any person who is entitled to compensation or to dependency and indemnity compensation and who is incarcerated in a *Federal, State, or local penal institution* for a period in excess of sixty days for conviction of a felony shall not be paid such compensation or dependency and indemnity compensation, for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends in an amount that exceeds [specified amounts].

38 U.S.C. § 5313 (1993) (emphasis and alteration added); *see also* 38 C.F.R. § 3.665 (1999) (implementing regulation). A December 2006 amendment changed the statutory language in § 5313(a)(1) to state that benefits will be reduced for claimants convicted of a felony and incarcer-

ated in a "Federal, State, local, or other penal institution or correctional facility." Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. 109-461, § 1002, 120 Stat. 3403, 3464-65 (2006). The amendment was entitled "Clarification of Correctional Facilities Covered by Certain Provisions of Law." *Id.* The legislative history of the amendment states that it was promulgated as part of "technical and clarifying amendments to title 38." 152 Cong. Rec. H9015 (daily ed. Dec. 8, 2006) (statement of Rep. Steve Buyer). While the statute was changed to incorporate "other penal institution[s] or correctional facilit[ies]," the implementing regulation does not include this change. *See* 38 C.F.R. § 3.665 (2009).

Mr. Wanless argues that the Veterans Court committed legal error when it interpreted the statute to include privately operated prisons under contract with the State of Oklahoma. According to Mr. Wanless, veterans incarcerated in facilities operated by private contractors are not subject to § 5313's mandated reduction in disability benefits. We disagree.

The Veterans Court first reviewed the language of § 5313 and found that "[t]he plain language of section 5313 does not explicitly include or exclude private prisons under State contract from the list of incarceration facilities." *Wanless*, 23 Vet. App. at 147. But silence alone does not create an ambiguity, especially if it can be reconciled with the statutory language. Section 5313 formerly stated that "any person who is entitled to compensation and who is incarcerated in a Federal, State, or local penal institution . . . for conviction of a felony shall not be paid such compensation." Mr. Wanless does not dispute that he was "incarcerated" within the meaning of § 5313. Rather, Mr. Wanless alleges that he was no longer in a facility that qualifies as "a Federal, State, or local penal institution" because Davis is a privately operated prison.

The statutory language, however, focuses on a veteran's incarceration for a felony conviction in any facility and does not distinguish between government-operated prisons and privately operated prisons. The statute's failure to distinguish between the two types of prisons indicates that incarceration in a privately owned and operated prison under contract with the state is tantamount to incarceration in a state penal institution. *See Evans v. Newton*, 382 U.S. 296, 299 (1966) ([W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State . . . . "); *see also Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (stating that employees of the Corrections Corporation of America perform a "traditionally state function" by operating a prison); *Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998) (holding that a Corrections Corporation of America prison guard acted under color of state law for purposes of § 1983 suit because "[t]he function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state."). There is no rationale for treating veterans incarcerated for felony convictions in a privately operated, yet state contracted prison more favorably than veterans incarcerated in state-operated prisons. Because Mr. Wanless was incarcerated at a prison contracted by the Oklahoma Department of Corrections, the interpretation of the statutory language by the Veterans Court is correct.

While we do not find the statute ambiguous, we take comfort in knowing that the legislative history also supports our conclusion. When promulgated in 1980, Congress intended for the statute to correct the perceived problem of "providing hundreds and thousands of tax free benefits to [veterans incarcerated for the commission of felonies] when at the same time the taxpayers of this

country are spending additional thousands of dollars to maintain these same individuals in penal institutions." 126 Cong. Rec. 26,118 (1980) (statement of Rep. G.V. Montgomery) (alteration added). During debate on the bill, Congressman Chalmers Wylie likewise focused on the economic consequences of providing federally funded disability benefits to "a prisoner . . . [already] being fully supported by tax dollars that fund the penal institution." 126 Cong. Rec. 26,122 (1980) (alteration added). Based upon this legislative history, the Veterans Court concluded that "Congress's main stated objective is the avoidance of duplicative Government expenditures that would result in a windfall for those convicted of felonies." *Wanless*, 23 Vet. App. at 149. Legislative history is "often murky, ambiguous, and contradictory," *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005), but here it clearly points to an appropriate legislative rationale for reducing the disability benefits of incarcerated veterans. Thus, the legislative history of § 5313 supports the Veterans Court's decision.

The December 2006 clarifying amendment to § 5313 further supports the Veterans Court's decision. The amendment, published as a "Clarification of Correctional Facilities Covered by Certain Provisions of Law," broadens the statute to include "Federal, State, local, or *other penal institution or correctional facility.*" 38 U.S.C. § 5313 (emphasis added). But, as the Veterans Court duly noted, the amendment was not substantive but rather "technical and clarifying." *See* 152 Cong. Rec. H9015 (daily ed. Dec. 8, 2006) (statement of Rep. Steve Buyer). The amendment made explicit what was already implicit in the statute's language and the legislative history—a desire to avoid duplicative government expenditures. *See* 126 Cong. Rec. 26,122 (1980) (statement of Congressman Chalmers Wylie) ("In the case of imprisonment, when a

prisoner is being fully supported by tax dollars that fund the penal institution, it becomes ludicrous to continue payment of benefits designed to help him maintain a standard of living."). Because the amendment did not effectuate a substantive change in the law, but rather clarified the original intent of Congress, it supports the conclusion that the prior version of the statute applies to privately operated penal institutions contracted by the state.

Finally, the Veterans Court also gave proper weight to the VA General Counsel's opinion. Lacking the formalities of notice-and-comment rulemaking, the General Counsel's opinion is entitled to deference only in so far as it has "the power to persuade." *Skidmore*, 323 U.S. at 140. The Veterans Court correctly found the General Counsel's opinion persuasive. The General Counsel's opinion provided three persuasive reasons for including veterans such as Mr. Wanless within the scope of § 5313:

> (1) A private prison's authority to confine a veteran derives from his State felony conviction and the authority to imprison citizens ultimately rests with the government only; (2) interpreting section 5313 to apply to private prisons under State contract would promote the statute's stated legislative purpose of avoiding the duplication of governmental expenditures for veterans who are already supported by the government and suffer no lost earnings as a result of their disability; and (3) creating a distinction between veterans in State-operated and State-contracted privately operated prisons would create an unreasonable or irrational result because it would both thwart the intentions of Congress and allow felons who chance to be incarcerated in private facilities at government expense [to] continue to be entitled to

the full amount of their VA benefits while felons incarcerated in State-owned-and-operated facilities would not.

*Wanless*, 23 Vet. App. at 151. We agree with the Veterans Court that these reasons are persuasive and consistent with the language and legislative history of § 5313. Accordingly, the Veterans Court was correct in relying on the General Counsel's "very persuasive" opinion. *Id.*

Accordingly, we hold that the Veterans Court properly construed § 5313 to mandate the reduction in disability benefits of veterans incarcerated in privately operated, yet state-contracted prisons.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the Veterans Court.

**AFFIRMED**

### COSTS

No costs.