# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-5628

GARY PHILBROOK, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 21, 2020                                    Decided May 19, 2020)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Shondriette D. Kelley*, with whom *James M. Byrne*, General Counsel; *Mary A. Flynn*, Chief Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, GREENBERG, and TOTH, *Judges*.

TOTH, *Judge*: Veteran Gary Philbrook applied for a total disability evaluation based on individual unemployability (TDIU) while he was in the custody of a state institution following a judgment of guilty except for insanity on a criminal charge entered by an Oregon court. The Board denied TDIU under federal provisions that prohibit the assignment of a total disability rating to a veteran who "is incarcerated in a Federal, State or local penal institution or correctional facility for conviction of a felony." 38 U.S.C. § 5313(c); *accord* 38 C.F.R. § 3.341(b) (2019). Mr. Philbrook appeals, arguing that the statute does not apply to his circumstances and, thus, did not prevent an award of TDIU. Because the plain language of the statute covers the veteran's situation, we affirm.

## I. BACKGROUND

Mr. Philbrook served in the Army from 2000 to 2004. Immediately upon leaving service, he was awarded disability compensation for PTSD with a 70% rating. (That evaluation was decreased to 50% five years later, but it was raised to 70% again in 2013.) In October 2009, the veteran was arrested after seriously injuring another individual. The record is sparse on details, but authorities charged him with attempted murder, first-degree assault, and unlawful use of a weapon. The matter proceeded in the Circuit Court of Oregon for the County of Lincoln.

In April 2011, that court entered a "Judgment Upon Stipulation and Finding of Guilty Except for Insanity." R. at 797-98. It determined that Mr. Philbrook's actions constituted the crime of attempted murder, a class A felony. Consistent with his plea, the Court found him "guilty except for insanity of the crime of attempted murder." R. at 799. Under Oregon law, a person "is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." OR. REV. STAT. § 161.295(a) (2011). Given the veteran's danger to others, the court ordered him "placed under the jurisdiction of the Psychiatric Security Review Board . . . for care, custody and treatment for a maximum period not to exceed 20 years"; and "committed [him] to the custody of the Oregon State Hospital." R. at 799.

While in custody, Mr. Philbrook sought TDIU, a total disability rating granted to a veteran who is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2019). Per the Board, the veteran twice asserted that service-connected psychiatric problems prevented him from sustaining gainful employment—in September 2011 and March 2013. (Only the March 2013 TDIU application is in the present record.) The issue of entitlement to TDIU eventually reached the Board, which denied it in a June 2018 decision. After finding that Mr. Philbrook had been "continuously incarcerated for a felony since October 2009," the Board concluded that section 5313(c), as implemented by § 3.341(b), prohibited TDIU "as a matter of law." R. at 4-5. The veteran appealed, challenging the Board's legal reasoning and seeking reversal.

Things got complicated after the case was referred to a panel of the Court in February 2020. First, Mr. Philbrook's counsel notified us of his discovery that the veteran was released from the Oregon State Hospital in April 2018, whereupon he once again sought and was denied TDIU in July 2018. He appealed this decision.

Then, a little more than a month after Mr. Philbrook filed his notice, the Secretary advised that a decision review officer granted TDIU, effective April 13, 2018—the day after the veteran was released from the hospital. The Secretary also proposed that the present appeal was now moot because Mr. Philbrook could challenge the effective date assigned. Additionally, the Secretary filed a contemporaneous "Notice of Change of Position," stating that, if the Court disagreed with VA on mootness, the Agency would agree to a remand so that the Board could reconsider its

finding that Mr. Philbrook had been "continuously incarcerated" since 2009, in light of evidence suggesting he was released from the state hospital in 2013 rather than in 2018.

In reply, Mr. Philbrook rejects the Secretary's allegation of mootness *and* his remand concession. "If the interpretation of the Board is correct," the veteran maintains, "then affirmance is warranted and not remand." Appellant's April 9, 2020, Reply at 3.

## II. ANALYSIS

Given the Secretary's suggestion of mootness, and our obligation to ensure that we have jurisdiction, we first address whether a live case or controversy remains. Finding that the appeal is not moot, we then proceed to the merits. And, as explained below, we conclude that section 5313(c)'s plain text confirms the Board's reading of the statute as precluding the award of TDIU to the veteran while he was confined in a state mental institution following criminal court proceedings.

### A. *Jurisdiction*

This Court long ago adopted the rule from Article III, section 2 of the U.S. Constitution that our jurisdiction only extends to a "case or controversy." *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990). A live case or controversy must be present at the outset of an appeal and persist throughout its pendency. *See Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014). As a jurisdictional requirement, the Court has an independent duty to ensure that a case or controversy still exists. *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019). If an appellant receives the benefit or relief sought before the Court reaches a decision, the case becomes moot and the appeal must be dismissed. *See id.* But we can dismiss this case as moot only if it is impossible for us to grant "any effectual relief whatever" to Mr. Philbrook in the event that he prevails. *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019).

Mr. Philbrook's case is not moot because he seeks a determination of entitlement to TDIU for a specific period of time, rather than merely entitlement to TDIU as a general matter. VA made TDIU effective from April 13, 2018—the day after the veteran was discharged from the Oregon State Hospital. But this excludes the period between Mr. Philbrook's TDIU application date (sometime in September 2011, or in March 2013 at the latest) and his release date, all the while he

was confined by the State of Oregon.[1] If the Court were to determine that section 5313(c) doesn't preclude payment of TDIU during this period and reverse the Board decision, that would certainly constitute "effectual relief." *Mission Prod. Holdings*, 139 S. Ct. at 1660.

Nor are we persuaded by the Secretary's contention that this case is moot because Mr. Philbrook can appeal the effective date of TDIU awarded in March 2020. The mootness standard set out in *Mission Product Holdings* is a "demanding" one. *Id*. Whether this analysis is affected by the unique opportunities veterans law might provide for obtaining relief through later proceedings—such as a request to reopen a claim followed by an earlier-effective-date argument—is a question we need not resolve here. The basis of the Board's TDIU denial was legal, not factual, in nature. The legal impediment of section 5313(c) would still exist in any effective-date appeal Mr. Philbrook may bring as to VA's March 2020 decision. And, at oral argument, the Secretary reaffirmed his position that the Board's interpretation of section 5313(c) is correct. OA Recording at 36:20-35. In other words, the present dispute between the parties would arise again in any future administrative or judicial appeal. Given all these considerations, the Court concludes that this case is not moot and jurisdiction exists.

B. *Section 5313(c)*

Now, the merits. Mr. Philbrook first sought TDIU while he was in custody at the Oregon State Hospital. The Board denied that benefit under section 5313. That statute, in relevant part, provides:

> The Secretary shall not assign to any veteran a rating of total disability based on the individual unemployability of the veteran resulting from a service-connected disability during any period during which the veteran is incarcerated in a Federal, State, local, or other penal institution or correctional facility for conviction of a felony.

38 U.S.C. § 5313(c).

First enacted in 1980, subsection (c) initially applied to veterans "incarcerated in a Federal, State, or local penal institution for conviction of a felony." Veterans' Disability Compensation and Housing Benefits Amendments of 1980, Pub. L. No. 96-385, § 504(a), 94 Stat. 1528, 1534-35. A

---

[1] In his "Notice of Change of Position," the Secretary relies on a VA treatment note that refers to the veteran's discharge from the Oregon State Hospital in July 2013. But even assuming the reliability of the July 2013 date, it makes no difference for mootness purposes. Even if the veteran did not seek TDIU until March 2013, a July 2013 release date would still mean that the Board's reading of section 5313 denied him four months' worth of TDIU. The monthly 100% compensation rate in 2013 was $2,107 for a veteran without dependents. *See* https://www.benefits.va.gov/COMPENSATION/resources_comp0100.asp.

4

"technical and clarifying" amendment was passed by Congress in 2006 to confirm that the provision covered "a Federal, State, local, or *other penal institution or correctional facility*." *Wanless v. Shinseki*, 618 F.3d 1333, 1338 (Fed. Cir. 2010).

The terms at issue in section 5313(c)—"incarcerated," "penal institutional or correctional facility," "conviction"—are not defined by the statute or the implementing regulation, § 3.341(b), which merely repeats the disputed statutory text without elaboration.[2] Thus, this case turns on statutory, not regulatory, interpretation. *See Cook v. Snyder*, 28 Vet.App. 330, 339 (2017), *aff'd sub nom. Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018). That is an inquiry the Court undertakes de novo. *Atilano v. Wilkie*, 31 Vet.App. 272, 279 (2019).

"We begin with the language of the statute itself" and presume, in the absence of explicit definitions, that words in a statute "bear their ordinary meanings." *Id.* (internal quotation marks and citations omitted). When section 5313(c) was enacted, "incarceration" was synonymous with "imprisonment," which meant "[t]he act of putting or confining a man in prison"; "[t]he restraint of a man's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion." BLACK'S LAW DICTIONARY 681, 685 (5th ed. 1979); WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1141 (3d ed. 1986) (defining "incarcerated" as "imprisoned, confined").

The word "conviction" was defined as the result of a judicial proceeding that "ends in a judgment or sentence that the accused is guilty as charged." BLACK'S at 301; *accord* WEBSTER'S at 499. A "conviction" includes "ascertainment of guilt by a plea of guilty or nolo contendere." BALLENTINE'S LAW DICTIONARY 270 (3d ed. 1969).

Finally, a "correctional facility" or "correctional institution" was used as "[a] generic term describing prisons, jails, reformatories and other places of correction and detention," with "correction" meaning "[d]iscipline, treatment and rehabilitation of offenders through confinement, parole, probation, counseling, etc." BLACK'S at 311; *accord* BLACK'S LAW DICTIONARY 370, 1232 (8th ed. 2004).

Save for slight variations, these are the definitions adopted by this Court and the Federal Circuit when previously interpreting section 5313(c). Thus, relying on *Black's* definition of

---

[2] "A total rating for compensation purposes based on individual unemployability which would first become effective while a veteran is *incarcerated in a Federal, State or local penal institution for conviction of a felony*, shall not be assigned during such period of incarceration." 38 C.F.R. § 3.341(b) (2019) (emphasis added).

"conviction" as the "process of judicially finding someone guilty of a crime; the state of having been proved guilty," the Federal Circuit concluded that the term encompasses pleas such as guilty or no contest. *Mulder v. McDonald*, 805 F.3d 1342, 1346-47 (Fed. Cir. 2015), *aff'g Mulder v. Gibson*, 27 Vet.App. 10 (2014); *see also Wilson v. Gibson*, 753 F.3d 1363, 1367 (Fed. Cir. 2014). That is, "according to its ordinary meaning, a 'conviction' occurs when the accused is found—or pleads—guilty" and is "separate and distinct" from the manner of sentencing. *Mulder*, 805 F.3d at 1347. Other terms have received similar analyses. *See, e.g.*, *Wanless v. Shinseki*, 23 Vet.App. 143, 147 (2009), *aff'd*, 618 F.3d 1333 (Fed. Cir. 2010) ("incarcerated"); *see also Woodard v. Shinseki*, 480 F. App'x 576, 579 (Fed. Cir. 2012) (nonprecedential) (reading the terms "commitment" and "incarceration" as "interchangeable" under the statute).

In our view, the plain meanings of these statutory terms cover Mr. Philbrook's circumstances. In accordance with his plea of guilty except for insanity, a state trial court found that his "actions constituted the crime of attempted murder, a class A felony." R. at 799. He was taken into custody and confined at a state mental institution following these criminal proceedings.

For good measure, this interpretation of the plain language of section 5313(c) coheres with the purpose of the statute, which the Federal Circuit noted is "to correct the perceived problem of providing hundreds and thousands of tax free benefits to veterans incarcerated for the commission of felonies when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same individuals in penal institutions." *Wanless*, 618 F.3d at 1337 (cleaned up). The rest of section 5313 works toward the same goal. Subsection (a) restricts the amount of VA benefits payable to an incarcerated individual, while subsection (b) permits the unpaid portion of those benefits to be apportioned to persons dependent on the incarcerated individual for financial support.

Mr. Philbrook's contention that section 5313(c) does not apply to him is based on an improperly narrow reading of the statute's language. For example, he suggests that he doesn't fall within the provision's reach because he isn't "confined in a jail or prison." Appellant's Br. at 8. Congress could have used those more specific terms here, but it didn't. And we presume that its word choice was deliberate. *See Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347 (Fed. Cir. 2004). A jail or a prison is certainly an example of a "correctional facility," but that term is broader and—as noted above—describes a place where a person is confined or detained for punishment, treatment, or other purposes. When asked, the veteran's counsel conceded that he was

not free to leave the Oregon State Hospital. OA Recording at 17:35-44. Even the definition of "penal institution" quoted by the veteran is more expansive than he acknowledges. Appellant's Br. at 8 ("A penal institution means any institution used to house or detain a person who is convicted of a crime; or who is in direct or indirect custody after a lawful arrest."). In short, we see nothing in the plain language of section 5313(c) that would exclude Mr. Philbrook from its prohibition on the award of TDIU while he was confined at the Oregon State Hospital.

At oral argument, the veteran reformulated his position slightly. He asserted that there was insufficient evidence in the record before the Board to support its determination that he was convicted of a felony within the meaning of section 5313(c). Contrary to his contention, however, the Oregon circuit court's judgment provided all the facts needed for the Board's analysis. It adjudged him "guilty except for insanity of the crime of attempted murder," a "class A felony," and "committed" him to the Oregon State Hospital's "custody." R. at 798-99. The fact that this document does not use the specific word "conviction" is immaterial. Whether the undisputed facts of this case are covered by section 5313(c) does not require an evidentiary inquiry into the record but rather a legal inquiry into the statutory language.

This brings us to another important point warranting clarification. To buttress his argument that section 5313's bar on TDIU applies here, the Secretary directs us to state law. He notes that, for certain purposes, Oregon defines a "correctional facility" to include "a state hospital or a secure intensive community inpatient facility" with respect "to persons detained therein charged with or convicted of a crime, or detained therein after having been found guilty except for insanity of a crime." OR. REV. STAT. § 162.135(2) (2019); *accord id.* § 163A.005(3) (2019). Mr. Philbrook takes a similar tack, advising us in a post-argument filing of an Oregon intermediate appellate court decision holding that, in certain circumstances, an adjudication of guilty except for insanity does not count as a "conviction*." State v. Saunders*, 97 P.3d 2161 (Or. Ct. App. 2004).

But we do not think such analysis is necessary or even appropriate. The "general presumption" is that, "in the absence of a plain indication to the contrary, . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989). "One reason for this rule of construction is that federal statutes are generally intended to have uniform nationwide application"; another is "the danger that the federal program would be impaired if state law were to control." *Id*. at 44

7

(internal quotation marks omitted). Courts must look to the purpose of the Federal statute when assessing what Congress intended. *Id*.

An instructive example of this point was made by the Second Circuit when analyzing the Prison Litigation Reform Act (PLRA), a Federal statute that involves the same kind of semantic inquiry as section 5313. The PLRA limits lawsuits that may be brought by "a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Predictably, would-be plaintiffs often seek to avoid the PLRA's limitations by arguing that they are not "confined in a jail, prison, or other correctional facility" as defined by state law. Rejecting one such argument, the Second Circuit reasoned that the "overarching goals" of the PLRA "are universal; they do not change from state to state. Nor do they logically depend on how particular facilities are characterized under various state laws." *Ruggiero v. County of Orange*, 467 F.3d 170, 174 (2d Cir. 2006); *see also Booth v. Churner*, 206 F.3d 289, 300 (3d Cir. 2000).

Mindful of the Supreme Court's presumption and persuaded by the Second Circuit's logic, we do not think Congress wanted section 5313's application to turn on state law. First, there is no indication that Congress intended state law to govern inquiries under section 5313 as it did in other veterans law contexts.[3] *Cf.* 38 U.S.C. § 103(c) (assessing the validity of a marriage based on "the law of the place where the parties resided" at the relevant time). We note that a contrary congressional choice here could have quickly led to some tricky problems. Take, for example, the question of whether an adjudication of guilty except for insanity qualifies as a "conviction." Under state law, the answer is: it depends. In the case cited by Mr. Philbrook, the Oregon Court of Appeals said "no" in the context of a law that made an act of public indecency a felony when the defendant had a prior "conviction" for that crime. *Saunders*, 97 P.3d at 1262-63. But in another case, the Supreme Court of Oregon held that someone adjudicated guilty except for insanity was "convicted" for purposes of establishing lower court jurisdiction for post-conviction relief. *Mueller v. Benning*, 841 P.2d 640, 642 (Or. 1992); *see also State v. Olmstead*, 800 P.2d 277, 282 (Or. 1990) ("a defendant who is found guilty except for insanity has committed all elements of the crime, although the defendant is to be treated differently at the dispositional stage of the proceedings").

---

[3] In a case involving section 5313(a), the Federal Circuit, citing *Mississippi Band of Choctaw Indians v. Holyfield*, expressed its "doubt" that Congress wanted the statute's operation to depend on state law but ultimately found it unnecessary to resolve that question. *Mulder v. McDonald*, 805 F.3d 1342, 1347-48 & n.3 (Fed. Cir. 2015).

Fortunately, we need not disentangle this thicket of state law interpretations because there's no sign that they are relevant to determining the plain meaning of "conviction" in section 5313(c).

Second, making the statute's application dependent on the varying terms or specific practices employed by states in their criminal justice and penal systems would impede the statute's purpose, which is "the avoidance of duplicative Government expenditures that would result in a windfall for those convicted of felonies." *Wanless*, 618 F.3d at 1337. For example, in *Wanless*, the Federal Circuit declined to read the term "a Federal, State, local, or other penal institution or correctional facility" as excluding privately operated prisons. Among the reasons it cited, the court found "no rationale for treating veterans incarcerated for felony convictions in a privately operated, yet state contracted prison more favorably than veterans incarcerated in state-operated prisons." *Id*. Implicit in this reasoning is the acknowledgment that the purpose of section 5313(c)— respecting the public fisc by prohibiting duplicative Government outlays—would be frustrated if the statute's application turned on the fortuity of the particular facility in which a convicted veteran is incarcerated.

This last point bears repeating in this case. The Court is cognizant that Mr. Philbrook was found to be suffering from a mental disease or defect—possibly his service-connected PTSD—at the time he committed the acts that led to his "guilty except for insanity" conviction. We are also aware that he was committed to the Oregon State Hospital for "care, custody and treatment." R. at 799. But the purpose of section 5313(c)'s prohibition on the award of TDIU to incarcerated veterans is not punitive in nature, and its application in a specific case comes with no moral judgment on the individual veteran concerned. It is a fiscal measure. And under its plain terms, Mr. Philbrook, while confined at taxpayer expense at the Oregon State Hospital after being adjudged guilty except for insanity of attempted murder, fell within its ambit.

### III. CONCLUSION

Having found no error in the Board's legal analysis, and accepting the appellant's waiver of any reason to remand, the Court AFFIRMS the June 19, 2018, Board decision.