# United States Court of Appeals for the Federal Circuit

---

**GARY PHILBROOK,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2233

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-5628, Judge Coral Wong Pietsch, Judge Joseph L. Toth, Judge William S. Greenberg.

---

Decided: October 8, 2021

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, ROBERT EDWARD KIRSCHMAN, JR.; CHRISTOPHER O. ADELOYE, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, O'MALLEY, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Gary Philbrook applied for a total disability rating based on individual unemployability. The Court of Appeals for Veterans Claims concluded that Mr. Philbrook was ineligible for such a rating because he was committed to the custody of a state hospital in connection with a criminal judgment. We agree with Mr. Philbrook that the Veterans Court erred in its determination that a federal statute barred the assignment of a total disability rating for Mr. Philbrook. We reverse the Veterans Court's decision and remand for further proceedings.

I

Mr. Philbrook served in the Army from 2000 to 2004. *Philbrook v. Wilkie*, 32 Vet. App. 342, 343 (2020) (*Decision*). Upon leaving service, he was awarded disability compensation for PTSD. *Id.*

In April 2011, Mr. Philbrook stipulated to a judgment of "guilty except for insanity" in connection with a felony. *Id.* at 344. Under Oregon law, an individual is guilty except for insanity if, "as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." *Id.* (citing Or. Rev. Stat. § 161.295(1) (2011)). The court ordered Mr. Philbrook to the custody of the Oregon State Hospital "under the jurisdiction of the Psychiatric Security Review Board . . . for care, custody and treatment for a maximum period not to exceed 20 years." *Id.*

While in custody, Mr. Philbrook applied for total disability based on individual unemployability (TDIU). *Id.* A VA regional office concluded that Mr. Philbrook's PTSD did not entitle him to TDIU because it did not preclude gainful

employment. J.A. 35. Mr. Philbrook appealed to the Board of Veterans' Appeals, which did not consider the facts of his disability in detail, but denied TDIU "as a matter of law" under 38 U.S.C. § 5313(c) and the VA's corresponding regulation 38 C.F.R. § 3.341(b). J.A. 67. Section 5313(c) precludes the assignment of a TDIU rating for any period "during which the veteran is incarcerated in a Federal, State, local, or other penal institution or correctional facility for conviction of a felony."

The Veterans Court affirmed the Board's decision, reasoning that Mr. Philbrook's stipulation to a judgment of guilty except for insanity, and his subsequent confinement at the Oregon State Hospital, qualified as being "incarcerated" in a "correctional facility" under the statutory language. *Decision*, 32 Vet. App. at 346–49. Mr. Philbrook now appeals the Veterans Court's decision.

II

In 1980, Congress passed the Veterans' Disability Compensation and Housing Benefits Amendments of 1980, including the relevant language of § 5313(c):

> The Administrator shall not assign to any veteran a rating of total disability based on the individual unemployability of the veteran resulting from a service-connected disability during any period during which the veteran is incarcerated in a Federal, State, or local penal institution for conviction of a felony.

Pub. L. No. 96-385, sec. 504(a), 94 Stat. 1528, 1534–35.

A purpose of § 5313(c) expressed by members of Congress when the statute was promulgated was to address the perceived problem of providing government benefits to individuals who were already being provided for by taxpayer funding of penal institutions. *See* 126 Cong. Rec. 26,118 (1980) (statement of Rep. G.V. Montgomery) ("I do not see the wisdom of providing hundreds and thousands

of dollars of tax-free benefits to such individuals when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same individuals in penal institutions."); 126 Cong. Rec. 26,122 (1980) (statement of Rep. Chalmers Wylie) ("In the case of imprisonment, when a prisoner is being fully supported by tax dollars that fund the penal institution, it becomes ludicrous to continue payment of benefits designed to help him maintain a standard of living."); *see also Wanless v. Shinseki*, 618 F.3d 1333, 1337 (Fed. Cir. 2010).

Section 5313(c) initially applied to veterans "incarcerated in a Federal, State, or local penal institution." As part of the Veterans Benefits, Health Care, and Information Technology Act of 2006, Congress amended the language of the statute to cover individuals "incarcerated in a Federal, State, local, *or other penal institution or correctional facility*." 35 U.S.C. § 5313(c) (2006) (emphasis added) (as amended by Pub. L. No. 109-461, sec. 1002, 120 Stat. 3403, 3464–65).

The section of the 2006 public law that amended § 5313(c) was entitled "Clarification of Correctional Facilities Covered by Certain Provisions of Law." *See* 120 Stat. at 3464. The accompanying report from the Senate Committee on Veterans' Affairs explained that this was a "technical amendment" to "clarify" the language. S. Rep. No. 109-297, at 41–42 (2006). The purpose of this clarification was to address a concurring opinion from the Veterans Court's decision in *Wanless v. Principi*, 18 Vet. App. 337, 338 (2004), which suggested that a felon incarcerated in a private prison might not be covered by the statute. S. Rep. No. 109-297, at 41–42. The committee explained that "[i]f VA or the courts were to conclude that private prisons do not constitute a 'Federal, State, or local penal institution,' as the [Veterans Court] has suggested, there would be the anomalous situation of the section 5313 limitation applying to a felon in a publicly operated facility and not to a felon incarcerated for the same crime in a privately

operated facility." *Id.* Therefore, the 2006 amendment makes clear that "the section 5313 limitation applies to a felon incarcerated in any type of penal facility, including facilities operated by a private contractor." *Id.*

## III

We have jurisdiction to review questions of law in an appeal from a Veterans Court decision. 38 U.S.C. § 7292(d)(1). We review statutory questions and regulatory interpretation de novo. *See Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

The question before us is whether the phrase "incarcerated in a Federal, State, local, or other penal institution or correctional facility for conviction of a felony" in § 5313(c) covers Mr. Philbrook's confinement at the Oregon State Hospital. We find that the plain language of § 5313(c) does not cover Mr. Philbrook.

Mr. Philbrook was not confined in a "penal institution or correctional facility"; he was committed to a mental institution.[1] A mental institution is "a hospital for people with mental or emotional problems." *Mental Institution*, Merriam-Webster, www.merriam-webster.com/dictionary/mentalinstitution (last visited Sept. 9, 2021). Unlike "jail" or "prison," there is no necessary criminal element leading to treatment in a mental institution. Many psychiatric facilities (including the Oregon State Hospital) include both civil and criminal commitment categories. *About*

---

[1]    Mr. Philbrook cites current definitions of the relevant terms rather than definitions from the time of the statute's adoption in 1980 or amendment in 2006. Because the Secretary does not challenge the use of current definitions (and indeed argues that such definitions support his reading of the statute) we accept the current definitions as representative of the meaning of the terms at the time the statute was written.

*Us*, Or. State Hosp., www.oregon.gov/oha/osh/pages/about.aspx (last visited Sept. 9, 2021).

The Oregon State Hospital is not a "correctional facility" for the purpose of § 5313(c). Both parties provide definitions of the term "correctional facility." *See Correctional Institutions*, *Black's Law Dictionary* 311 (5th ed. 1979) ("[a] generic term describing prisons, jails, reformatories and other places of correction and detention"); *Correctional Facility,* Merriam-Webster, www.merriam-webster.com/dictionary/correctionalfacility (last visited Sept. 9, 2021) ("a place where people are kept when they have been arrested and are being punished for a crime: i.e., prison"). We find neither definition conclusive as to whether a mental hospital is a correctional facility, but we reject the Secretary's argument that any "place of correction," that provides "care, custody, and treatment," is a correctional facility. Appellee's Br. 9–10. Both cited definitions suggest a connection between a correctional facility and a criminal act. Under the Secretary's reading, a mental hospital (or indeed a hospital in general) is a correctional facility even as applied to patients unrelated to the criminal justice system. The term "correctional facility" cannot encompass a hospital that treats civil patients, and a hospital cannot be a correctional facility for some patients and not others.

The legislative history of the 2006 amendment suggests that a mental hospital is not a correctional facility for the purpose of § 5313(c). The original statutory language did not include the term "correctional facility," only "Federal, State, or local penal institution." Pub. L. No. 96-385, sec. 504(a), 94 Stat. 1528, 1534–35. When the term "correctional facility" was added to the statute in 2006, Congress explained that this was a "technical" and "clarifying" amendment not meant to change the original meaning. S. Rep. No. 109-297, at 41–42. The purpose of the amendment was to address the notion that an individual incarcerated in a private prison might not be covered by the

statute. *Id.* Nowhere does the legislative history suggest that adding the term "correctional facility" was meant to broaden the statute beyond what could be considered a "Federal, State, or local penal institution" under the original statutory language.

The Veterans Court found that the original legislative history from 1980 supported its reading of the term "correctional facility" because it suggested that the purpose of the statute was to avoid paying duplicative benefits to individuals already provided for at the taxpayer's expense. *Decision*, 32 Vet. App. at 347. At most, these statements of purpose suggest that Congress did not intend for prisoners to receive disability benefits while "incarcerated in a Federal, State, or local penal institution." We find the Congressional statements minimally probative as to whether a mental institution is a correctional facility, particularly where, as here, the disputed term "correctional facility" was not a part of the original statute. We decline to read the Congressional statements as dispositive to the meaning of a term added to the statute twenty-six years later.

Finally, we note that in an analogous statute, Congress unambiguously included language that separately covered individuals in correctional facilities, like those described in 38 U.S.C. § 5313(c), and individuals ordered to mental institutions. In the Social Security context, Congress limited benefits for individuals "confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense," and also for individuals "confined by court order in an institution at public expense in connection with . . . a verdict or finding that the individual is guilty but insane, with respect to a criminal offense." 42 U.S.C. § 402(x)(1)(A)(i), (x)(1)(A)(ii)(I). Thus, Congress used almost identical language to that at issue here, including the term "correctional facility," and then separately identified institutions that house individuals who have been found guilty, but insane, with respect to a criminal offense. Congress could have used similar language in

§ 5313(c) if it intended the statute to bar payments to individuals found guilty except for insanity and placed in the custody of a mental institution.

IV

Because the Oregon State Hospital is not a "penal institution or correctional facility" under § 5313(c), we reverse the Veterans Court's decision that Mr. Philbrook was barred from receiving a TDIU rating as a matter of law. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**